EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2025 TSPR 30 |
|---|---|
| Daniel Santiago Rojas (TS-12,466) | 215 DPR ___ |

Número del Caso: CP-2020-0006

Fecha: 26 de marzo de 2025

Oficina del Procurador General:

> Lcdo. Pedro A. Vázquez Montijo
> Subprocurador General
>
> Lcda. Mabel Sotomayor Hernández
> Subprocuradora General
>
> Lcda. Celia M. Molano Flores
> Procuradora General Auxiliar
>
> Lcda. Yaizamarie Lugo Fontánez
> Procuradora General Auxiliar
>
> Lcda. Melanie M. Mercado Méndez
> Procuradora General Auxiliar

Representante legal del querellado:

> Lcdo. Norberto Galíndez Rivera

Comisionada Especial:

> Hon. Isabel Llompart Zeno

Materia: Conducta Profesional – Suspensión inmediata del ejercicio de la abogacía por el término de un (1) año por infringir los Cánones 18, 35 y 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Daniel Santiago Rojas
    (TS-12,466)

CP-2020-6

Conducta
Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 26 de marzo de 2025.

Nuevamente tenemos la obligación de disciplinar a un abogado por su conducta antiética. En esta ocasión, por infracciones a los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

En conformidad con los fundamentos que expondremos a continuación, procedemos a suspender de forma inmediata al Lcdo. Daniel Santiago Rojas (licenciado Santiago Rojas o abogado) del ejercicio de la abogacía por el término de un (1) año.

I

El abogado fue admitido al ejercicio de la abogacía el 16 de julio de 1998 y prestó juramento como notario el 18 de agosto de 1998.[1]

A. Trasfondo fáctico y procesal de la *Queja* AB-2018-116

1. Alegaciones de la *Queja*

A principios de mayo de 2018, el Lcdo. Manuel A. Rivera Lugo (promovente) presentó una *Queja* en contra del licenciado Santiago Rojas. En síntesis, expuso que el abogado **-quien no está autorizado a ejercer la notaría en nuestra jurisdicción-** utilizó el nombre del promovente en un documento similar a una escritura de compraventa y al final incluyó el mismo nombre en la parte destinada para la firma, aunque aparecía tachado. Añadió que el licenciado Santiago Rojas actuó de forma fraudulenta al utilizar el nombre del promovente en un documento que este último no había autorizado, así como al representarle a los comparecientes que el negocio jurídico se otorgaba ante el promovente en su función de notario, todo ello sin su

_____

[1] Mediante una Opinión *Per Curiam* emitida el 5 de junio de 2012, ordenamos la suspensión inmediata e indefinida de la práctica de la abogacía y la notaría del Lcdo. Daniel Santiago Rojas (licenciado Santiago Rojas o abogado) debido a que éste infringió los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Véase *In re* Peña, Santiago, 185 DPR 764 (2012). Más adelante, mediante *Resolución* del 27 de marzo de 2015, ordenamos su reinstalación al ejercicio de la abogacía.

En múltiples instancias (15 de septiembre de 2016, 12 de abril de 2018, 11 de abril de 2022 y 26 de octubre de 2023), el abogado ha solicitado su reinstalación a la notaría. No obstante, este Tribunal ha provisto no ha lugar a dichas peticiones. Véanse *Resoluciones* de 28 de abril de 2017, 18 de abril de 2018, 29 de abril de 2022 y 9 de noviembre de 2023.

conocimiento y poniendo en riesgo su título como abogado y notario.

Como parte del trámite de la *Queja*, el 14 de mayo de 2018 se le concedió al abogado un término de diez (10) días, contado a partir de la notificación de la comunicación, para que contestara los planteamientos en su contra.

2. Reacción a la *Queja*

El 23 de mayo de 2018, el licenciado Santiago Rojas presentó un escrito en el que adujo que el documento en controversia se hizo a manera de un contrato de compraventa suscrito por las partes con anterioridad a la otorgación de una escritura.[2] En particular, manifestó que la situación se dio en el contexto de que unos clientes le pidieron que redactara un documento para solicitar una ayuda federal debido a que su propiedad había sufrido graves daños ante el paso del Huracán María en septiembre de 2017. Ante esto, preparó un "proyecto de escritura con los datos de los compradores y vendedores, incluyendo un testigo instrumental porque los compradores son no videntes".[3]

Además, el abogado expresó que las partes firmaron el proyecto de escritura y les advirtió que un notario debía autorizar la correspondiente escritura, ya que dicho documento se hizo para que pudieran "recibir la ayuda

---

[2]  *Contestación a Queja*, pág. 1.

[3]  Íd., pág. 2.

necesaria para rehabilitar la propiedad, por lo que [procedió] a tachar el nombre del [promovente] y de esa forma demostrar que no se había otorgado el proyecto de compraventa por un notario público".[4] Por último, indicó que asumía cualquier responsabilidad "por la redacción del proyecto de compraventa y de que el [promovente] nunca autorizó la redacción del mismo".[5]

Así las cosas, el 13 de agosto de 2018, emitimos una *Resolución* mediante la cual referimos el asunto a la Oficina del Procurador General para la investigación y el informe correspondiente.[6]

### 3. Informe de la Oficina del Procurador General y presentación de la *Querella*

Luego de la concesión de una prórroga, la Oficina del Procurador General presentó su Informe el 28 de marzo de 2019. En éste, reseñó los asuntos relacionados con la *Queja* y la reacción a la *Queja*. Específicamente, dejó claro que no existía controversia en cuanto a que: (1) el licenciado Santiago Rojas está suspendido de la práctica de la notaría, por lo que está impedido de realizar algún tipo de gestión a esos fines; (2) los clientes del abogado contrataron sus servicios para realizar una compraventa y un "documento" para solicitar una ayuda federal y por ello le pagaron $360 por concepto de honorarios, sellos y

---

[4]  *Contestación a Queja*, pág. 2.

[5]  Íd.

[6]  El archivo en autos de copia de la *Resolución* fue el 14 de agosto de 2018.

estudio de título; (3) el licenciado Santiago Rojas preparó un documento titulado "Escritura Número […] Compraventa", el cual tiene el formato de una escritura de compraventa; (4) al inicio de dicho documento, aparece tachado el párrafo que identifica al promovente como el notario autorizante del escrito; (5) en las páginas del documento constan las iniciales de las partes "comparecientes" y de la testigo instrumental, así como las huellas de los compradores, quienes eran ciegos; (6) al final del documento, aparecen las firmas de todos los mencionados y también el nombre del promovente, el cual aparece tachado, y (7) al momento de firmar, las partes se entregaron las correspondientes contraprestaciones.

Al analizar las alegaciones de las partes, la Oficina del Procurador General expuso que en el procedimiento disciplinario la vendedora del inmueble expresó que el licenciado Santiago Rojas, cuando les tomó las firmas, le había indicado que el documento era una escritura. No obstante, el abogado negó dicha alegación y argumentó que dicho documento era un proyecto de escritura que había preparado con el fin de que el promovente la otorgara y, a su vez, indicó a los comparecientes que éste podía utilizarse como un contrato privado.

En particular, la Oficina del Procurador General manifestó que de un análisis de los hechos del caso se podía concluir que el licenciado Santiago Rojas "les hizo creer a las partes que el documento era una escritura y

que estaba autorizado para hacerla",[7] ello en violación a los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Al respecto, la Oficina del Procurador General indicó lo siguiente en su Informe:

> El documento tiene todas las formalidades de una escritura. Si la intención del licenciado era que el notario promovente otorgara la escritura, no entendemos por qué este "no intervino, ni autorizó" ni aprobó la redacción del documento. Además, si esa era su intención, tampoco comprendemos por qué el promovido tachó en el documento el nombre del notario, tomó las firmas de las partes y celebró el negocio jurídico. El promovido tenía la obligación de informarle a todas las partes que estaba impedido de ejercer la notaría, y debió referir el asunto a un notario para el trámite correspondiente. Sin embargo, no lo hizo y promovió que las partes firmaran un documento lleno de falsedades, entre ellas, que el "Notario" y las partes conversaron y comprobaron que todos se encontraban en el pleno uso de sus facultades mentales; y que las partes aceptaban "la escritura en la forma redactada, por ser conforme a lo convenido, y yo, el Notario, en cumplimiento con la Ley". Ciertamente, en la transacción no hubo ningún notario involucrado.
>
> Por otro lado, si el interés del promovido era ayudar a confeccionar un contrato privado de compraventa, ¿por qué no lo tituló como tal? También, nos llama la atención que el promovido cobró $360.00, para sus honorarios, sellos y estudio de título.[8] (Énfasis omitido).

Además, al referirse al escrito en controversia, la Oficina del Procurador General lo calificó como un documento "desorganizado, tachado y confuso", por lo que concluyó que el abogado violó el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, al no actuar en aquella forma que la profesión jurídica en general estima adecuada

---

[7]    Véase *Informe del Procurador General*, pág. 11.

[8]    Íd.

y responsable en el sentido de que "[l]os abogados están para orientar adecuadamente a sus clientes y no para provocar confusión".[9]

En resumen, la Oficina del Procurador General concluyó que de los hechos que surgían de los anejos del Informe, así como de la investigación realizada por dicha oficina, se desprendía una conducta constitutiva de violación a los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, por parte del licenciado Santiago Rojas. Ante esto, recomendó el inicio del procedimiento disciplinario en contra del abogado por la violación de los mencionados cánones.

El 2 de mayo de 2019 emitimos una *Resolución* mediante la cual le concedimos al licenciado Santiago Rojas un término de veinte (20) días para que se expresara sobre el *Informe del Procurador General*.[10] Allí le apercibimos que, de no comparecer en el término provisto, se entendería que se allanaba a las recomendaciones formuladas en el mencionado Informe.

Así, el 24 de mayo de 2019, el abogado presentó una *Réplica al Informe del Procurador General*. En ésta alegó que el documento en controversia era un proyecto de escritura y que su intención era referir el asunto al promovente para que éste otorgara la escritura correspondiente. Sobre esto, mencionó que era uso y

---

[9]    Véase *Informe del Procurador General*, pág. 11.

[10]   El archivo en autos de copia de la *Resolución* fue el 6 de mayo de 2019.

costumbre colaborar con el promovente en términos de referirle casos de sus clientes desde el 2015 hasta el 2017.[11] Además, adujo que había explicado a los comparecientes que el mencionado documento "no era una escritura formal porque carecía de la [autorización] formal de un notario".[12] Ante esto, solicitó que se proveyera no ha lugar a la *Queja* en su contra.

A la luz del *Informe del Procurador General*, así como de la réplica a éste, el 28 de junio de 2019 le ordenamos a la Oficina del Procurador General que procediera con la presentación de la *Querella*.[13]

Así las cosas, el 20 de julio de 2020, la Oficina del Procurador General presentó la *Querella.* En ésta, reiteró la relación de hechos y el análisis expuestos en su Informe del 28 de marzo de 2019. Asimismo, presentó los cargos siguientes en contra del licenciado Santiago Rojas: (1) **Cargo I:** por infringir el Canon 18 del Código de Ética Profesional, *supra*, al no actuar en aquella forma que la profesión jurídica en general estima adecuada y responsable. Esto debido a que: (a) no orientó adecuadamente a sus clientes en torno a que estaba impedido de otorgar una escritura de compraventa por razón de no estar admitido al ejercicio de la notaría, y (b) provocó confusión al redactar un documento -en formato de escritura

---

[11] Véase *Réplica al Informe del Procurador General*, pág. 2.

[12] Íd., pág. 3.

[13] El archivo en autos de copia de la *Resolución* fue el 19 de julio de 2019.

para la firma de las partes- que estaba desorganizado, tachado y confuso; (2) **Cargos II y III**: por violación a los Cánones 35 y 38 del Código de Ética Profesional, *supra*, debido a que las actuaciones del abogado dieron la impresión a las partes de que el documento en cuestión era una escritura y que él estaba autorizado para hacerla, además de que el licenciado Santiago Rojas cobró $360 por concepto de honorarios, sellos y estudio de título.[14]

En conformidad con la Regla 14(f) de nuestro Reglamento, 4 LPRA Ap. XXI-B, el 30 de junio de 2021 se emitió un *Mandamiento para contestar Querella sobre conducta profesional* concediéndole término al abogado para

---

[14] En cuanto a los Cargos II y III, la Oficina del Procurador General indicó lo siguiente:

"El documento realizado por el querellado tiene todas las formalidades de una escritura e incluía la información del licenciado Rivera como notario, aunque posteriormente fuera tachada. Si la intención del querellado era que el licenciado Rivera otorgara la escritura, desconocemos [porqué] el primero no gestionó oportunamente la intervención o autorización del notario para la redacción del documento. Por el contrario, el licenciado Santiago tachó en el documento el nombre del notario, tomó las firmas de las partes y celebró el negocio jurídico. Es claro que el querellado tenía la obligación de informarle a todas las partes que estaba impedido de ejercer la notaría, por lo que debió referir el asunto a un notario para el trámite correspondiente. Sin embargo, no lo hizo y promovió que las partes firmaran un documento lleno de falsedades, entre ellas, que el "Notario" y las partes conversaron y comprobaron que todos se encontraban en pleno uso de sus facultades mentales; que las partes aceptaban "la escritura en la forma redactada, por ser conforme a lo convenido, y yo, el Notario, en cumplimiento con la Ley". Ello a pesar de que no existe controversia [sobre] que en la transacción realizada no hubo ningún notario involucrado. Por otro lado, si lo que estaba haciendo el querellado era un contrato privado de compraventa, debió haberlo titulado así y explicar a las partes sobre ese hecho y las consecuencias legales a esos fines. También es preocupante que el licenciado Santiago, cobró $360.00 por concepto de sus honorarios, sellos y estudio de título". (Énfasis omitido y corchetes suplidos). Véase *Querella*, págs. 4-5.

ello.[15] Así las cosas, el 10 de agosto de 2021, el licenciado Santiago Rojas presentó su *Contestación a Querella del Procurador General*. En ésta reiteró que el documento en cuestión era un borrador de escritura para que fuera otorgado por el promovente y que éste -sin explicación- se negó a otorgar la correspondiente escritura. Ante esto, el abogado alegó que devolvió los honorarios cobrados.

B. Proceso disciplinario ante la Comisionada Especial

El 6 de noviembre de 2023, designamos a la Lcda. Isabel Llompart Zeno (Comisionada Especial), exjueza del Tribunal de Primera Instancia, para que atendiera los procedimientos de la *Querella* que nos ocupa y presentara un Informe con las determinaciones de hechos y recomendaciones que estimara pertinentes.[16] Así pues, el 14 de noviembre de 2023, la Comisionada Especial emitió una *Orden* para determinar el plan de trabajo a seguir en el caso, por lo que citó a la Oficina del Procurador General y al licenciado Santiago Rojas a una vista a celebrarse el 6 de diciembre de 2023.

Llegada la fecha de la vista pautada, las partes acordaron las fechas para la presentación del *Informe entre Abogados*, la discusión del mencionado Informe y la vista en su fondo. Además, la Comisionada Especial le indicó al

---

[15] La notificación del *Mandamiento para contestar Querella sobre conducta profesional* fue el 1 de julio de 2021.

[16] El archivo en autos de copia de la *Resolución* fue el 7 de noviembre de 2023.

abogado que podría comparecer por derecho propio a las etapas preparatorias del proceso, pero debía asistir con un representante legal a la vista en su fondo.[17]

Entre otros trámites procesales, el 4 de abril de 2024, las partes presentaron un *Informe entre abogados enmendado.* Unos días después, el 9 de abril de 2024, se celebró la vista para discutir dicho Informe y allí la Comisionada Especial señaló una vista de estatus para el 13 de mayo de 2024 y la vista en su fondo para el 4 de junio de 2024.

El día de la vista del 13 de mayo de 2024, comparecieron la Lcda. Melanie M. Mercado Méndez de la Oficina del Procurador General y el Lcdo. Norberto Galíndez Rivera, representante legal del licenciado Santiago Rojas. El abogado no compareció ni se excusó. Allí el licenciado Galíndez Rivera manifestó que había dialogado con la licenciada Mercado Méndez para llegar a un acuerdo mediante el cual el abogado aceptaría los cargos imputados. Ante esto, la Comisionada Especial le indicó al licenciado Galíndez Rivera que era obligatorio que el licenciado Santiago Rojas compareciera a la vista en su fondo.

En consideración a lo informado en la vista del 13 de mayo de 2024 referente a que el abogado aceptaba los cargos imputados, el 24 de mayo de 2024 la Comisionada Especial emitió una *Orden* mediante la cual dispuso que las partes debían presentar un *Segundo Informe entre Abogados* en el cual se incluyeran las estipulaciones de hechos revisadas

---

[17] El archivo en autos de copia de la *Minuta* fue el 14 de diciembre de 2023.

y se informaran los hechos específicos que el licenciado Santiago Rojas aceptaba. En cumplimiento de orden, el 31 de mayo de 2024, las partes presentaron su *Segundo Informe entre Abogados.*

Más adelante, el 4 de junio de 2024 se celebró la vista en su fondo. A preguntas de la Comisionada Especial, el abogado reconoció la conducta imputada por la Oficina del Procurador General y aceptó los cargos en su contra. A su vez, el licenciado Santiago Rojas pidió disculpas por todo lo ocurrido. Ante esto, las partes acordaron someter el caso por el expediente. Por último, la licenciada Mercado Méndez consignó para récord que tanto el abogado como su representante legal "han sido muy cooperadores con la Oficina del Procurador General en cuanto [a]l manejo del asunto de la [Q]uerella, han colaborado de manera notable en este procedimiento que se llevó de forma armoniosa y [con] prontitud".[18]

El 23 de agosto de 2024, la Comisionada Especial presentó su Informe, en el cual expuso que se presentó prueba clara, robusta y convincente que apoyaba los cargos imputados. Por consiguiente, determinó que el licenciado Santiago Rojas infringió los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. Además, recomendó la suspensión del ejercicio de la abogacía por el término que este Tribunal considere adecuado.

---

[18]  Véase *Minuta del 4 de junio de 2024*, pág. 4.

Así las cosas, el caso quedó sometido en los méritos para su adjudicación el 18 de septiembre de 2024, por lo que procedemos a exponer la normativa aplicable.

II

En el ejercicio de nuestro poder inherente para regular la abogacía en Puerto Rico, tenemos la obligación de asegurarnos de que los miembros admitidos al ejercicio de la profesión legal realicen sus funciones de manera responsable, competente y diligente. *In re* Rivera Justiniano, 212 DPR 385, 400-401 (2023); *In re* Valenzuela Flores, 211 DPR 934, 939 (2023); *In re* Vélez Torres, 209 DPR 848, 863 (2022); *In re* Raffucci Caro, 206 DPR 589, 605 (2021).

El Código de Ética Profesional dispone las normas mínimas de conducta que rigen la práctica de la abogacía en nuestra jurisdicción con el fin de promover los más altos principios éticos en beneficio del cliente, de la profesión legal, de la sociedad y de las instituciones de justicia. *In re* Soto Peña, 213 DPR 663, 675 (2024); *In re* González Díaz, 201 DPR 145, 150 (2018); *In re* Montalvo Delgado, 196 DPR 541, 549 (2016); *In re* Vera Vélez, 192 DPR 216, 226 (2015).

A. Incumplimiento con los Cánones del Código de Ética Profesional

1. Canon 18 (Competencia del abogado y consejo al cliente)

En lo pertinente, el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, establece lo siguiente:

> [e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Como parte de este deber, se exige al abogado rendir una labor idónea, competente, diligente, oportuna y sin dilaciones, ya que actuar de forma contraria implica desplegar una conducta negligente, indiferente y displicente en los asuntos que se le han encomendado. *In re* Santiago Ortiz, 2024 TSPR 127, 215 DPR ___ (2024); *In re* Sánchez Pérez, 210 DPR 235, 262-263 (2022).

Según hemos expresado, el deber de diligencia consagrado en el Canon 18 del Código de Ética Profesional, *supra*, es "del todo incompatible con la desidia, despreocupación y displicencia" incurrida por un abogado al atender los asuntos encomendados por su cliente. *In re* Miranda Daleccio, 193 DPR 753, 762 (2015).

Así pues, cuando un abogado acepta la encomienda de representar a una persona y no la ejecuta adecuada y responsablemente, infringe el Canon 18 del Código de Ética Profesional, *supra.*

2. Canon 35 (Sinceridad y honradez)

En lo que concierne, el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 35, dispone lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho.

De acuerdo con dicho deber ético, se impone a todo abogado el deber de comportarse de forma sincera y honrada. *In re* Ayala Oquendo, 2025 TSPR 9, 215 DPR ___ (2025). Como hemos señalado, no es sincero ni honrado utilizar medios incompatibles con la verdad. *In re* Rádinson Pérez, *et al.*, 204 DPR 522, 540 (2020). Al respecto, en *In re* Sierra Arce, 192 DPR 140, 147 (2014), expresamos que,

> [l]a profesión jurídica está predicada en la búsqueda y defensa de la verdad. Por lo tanto, resulta inherentemente contrario a su función que un abogado se desvíe de su obligación de ser sincero y honrado en toda faceta en que se desempeñe, ya sea en su vida profesional o privada.

Por todo lo cual, los preceptos contenidos en el Canon 35 del Código de Ética Profesional, *supra*, se transgreden con el solo hecho de faltar a los valores de veracidad y honradez, los cuales son pilares fundamentales de la profesión legal. *In re* Ortiz Sánchez, 201 DPR 765, 781 (2019); *In re* Pagán Díaz, 198 DPR 398, 407 (2017).

3. <u>Canon 38 (Preservación del honor y dignidad de la profesión)</u>

El Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, puntualiza que los dos valores fundamentales con los que debe cumplir un abogado son la dignidad y el honor al ejercer la abogacía y en su vida privada. *In re* Villalona Viera, 206 DPR 360, 374-375 (2021); *In re* Sánchez Reyes, 204 DPR 548, 574 (2020).

Por lo anterior, el mencionado canon instituye el deber de todo abogado de exaltar el honor y la dignidad de su profesión, así como el de evitar hasta la apariencia de

conducta profesional impropia. Esto significa que todo profesional del Derecho debe desempeñarse de manera escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejerce y la institución que representa. *In re* Soto Peña, *supra*, págs. 677-678; *In re* Cardona Estelritz, 212 DPR 649, 667 (2023); *In re* Rádinson Pérez *et al.*, *supra*, pág. 542.

De acuerdo con lo antes esbozado, cada abogado debe ser consciente de que es un espejo en el cual se refleja la imagen de la profesión legal. *In re* Sierra Arce, *supra*, pág. 148. Así, el abogado es la imagen misma de todo el andamiaje judicial y del valor de la justicia. *In re* Irizarry Rodríguez, 193 DPR 633, 666 (2015).

A su vez, el Canon 38 del Código de Ética Profesional, *supra*, ordena a los miembros de la profesión legal a evitar la apariencia de conducta impropia. Sobre esto, hemos enfatizado en que la confianza, el respeto y la imagen que la sociedad deposita en cada uno de los abogados, en la profesión y en la institución de la justicia desmerece cuando la actuación del abogado representa incorrección. *In re* Irizarry Rodríguez, *supra*, pág. 666.

4. El rol del Comisionado Especial

El Comisionado Especial que es designado para atender una querella en contra de un abogado ocupa el rol de un juez de primera instancia, ya que tiene la encomienda de recibir la prueba y evaluarla, así como dirimir la credibilidad de aquella prueba testifical presentada. *In*

*re* Rivera Justiniano, *supra*, pág. 404; *In re* Colón Ortiz, 204 DPR 452, 460-461 (2020). Como norma general, las determinaciones de un Comisionado Especial merecen nuestra deferencia. *In re* Rivera Justiniano, *supra*, pág. 404; *In re* Meléndez Mulero, 208 DPR 541, 554 (2022).

Este Tribunal sostendrá, de ordinario, las determinaciones de hechos del Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. *In re* Colón Ortiz, *supra*, pág. 461; *In re* Soto Aguilú, 202 DPR 137, 146 (2019). Claro está, es importante resaltar que podemos adoptar, modificar o rechazar el informe presentado por el Comisionado Especial. *In re* Meléndez Mulero, *supra*, pág. 554.

Pasemos a evaluar si el licenciado Santiago Rojas infringió los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

III

Para fines de adjudicar los tres (3) cargos imputados en este proceso disciplinario, corresponde que evaluemos las determinaciones de hechos que realizó la Comisionada Especial en su Informe. Por su relevancia, citamos *in extenso* las determinaciones allí esbozadas:

> La prueba admitida en este caso fue la prueba documental estipulada y presentada en la Vista en su fondo. **Además, se admitieron las estipulaciones de hechos contenidas en el Segundo Informe entre Abogados Enmendado y los hechos que aceptó el querellado**, según se expresó anteriormente.
> . . . . . . . .
>
> Aunque en algunas partes es repetitivo, consideramos necesario incluir todas las

estipulaciones de hechos consignadas en el Segundo Informe entre Abogados Enmendado y los hechos que aceptó el querellado, que están en la parte 1A titulada Teoría del caso de la OPG. Una parte complementa a la otra. Las siguientes son las estipulaciones de hechos:

1. Mediante Opinión *Per Curiam* de 5 de junio de 2012, el licenciado Santiago Rojas fue suspendido de la práctica de la notaría. [*In re*: Jorge Peña y Santiago Rojas, 185 DPR 764 (2012)].

2. El 8 de agosto de 2017, el señor Lozada Santana, su esposa, la señora Camacho Pastrana y la señora Figueroa Navarro fueron a la oficina del licenciado Santiago Rojas y le informaron que ya tenían convenida la compraventa de la propiedad de la señora Figueroa Navarro.

3. El querellado sugirió a esto que, antes de otorgar la escritura, debía realizar un estudio de título.

4. Luego del Huracán María del 20 de septiembre de 2017, los compradores solicitaron al licenciado Santiago Rojas que redactara un documento para solicitar la ayuda de FEMA porque la propiedad había sufrido daños a causa del fenómeno atmosférico.

5. El querellado redactó un documento con los datos de los compradores, la vendedora y la señora Nieves Berr[í]os, en calidad de testigo instrumental, porque los compradores eran no videntes.

6. El 6 de octubre de 2017, el señor Lozada Santana, la señora Camacho Pastrana, la señora Figueroa Navarro y la señora Nieves Berr[í]os se reunieron en la casa de la madre de la señora Camacho Pastrana para firmar el documento.

7. El licenciado Santiago Rojas acudió a la casa de la madre de la señora Camacho Pastrana con el documento, cuyo encabezado lee "Escritura Número […] Compraventa", para tomarle la firma a todos ellos.

8. El documento fue iniciado en todas las páginas con las respectivas huellas

dactilares de los compradores, y firmado al final.

9. **El documento hacía referencia al notario Rivera Lugo.**

10. **El querellado tachó con bolígrafo las referencias al licenciado Rivera Lugo en todo el documento.**

11. Luego de firmar el documento, los compradores entregaron un cheque de gerente a la vendedora de $15,000.00.

12. **Los otorgantes pagaron al licenciado Santiago Rojas $360.00 por los honorarios legales, sellos y estudio de título.**

13. En abril de 2018, el querellado coordinó con el licenciado Rivera Lugo referirle a los compradores y a la vendedora para otorgar una escritura pública.

14. Los otorgantes acudieron en dos ocasiones a la oficina del licenciado Rivera Lugo.

15. En la segunda visita, el señor Lozada Santana mostró al licenciado Rivera Lugo el documento que los comparecientes habían firmado en presencia del licenciado Santiago Rojas.

16. El licenciado Rivera Lugo, al observar el documento, se negó a autorizar la escritura de la compraventa.

17. El licenciado Rivera Lugo no participó en la preparación del documento firmado el 6 de octubre de 2017.

18. **El documento de 6 de octubre de 2017 fue preparado y entregado a las partes para su firma por el licenciado Santiago Rojas.**

A continuación, se consignan los hechos que aceptó el querellado, según aparecen en la parte 1A del Segundo Informe entre Abogados Enmendado. Los incluimos tal y como se incluyeron en dicho escrito:

El 8 de mayo de 2018, el Lcdo. Manuel Antonio Rivera Lugo (licenciado Rivera Lugo o promovente) presentó una queja contra el Lcdo. Daniel Santiago Rojas

(licenciado Santiago Rojas o querellado) en el Tribunal Supremo de Puerto Rico, Queja Núm. AB-2018-0116[.] El 24 de mayo de 2018, el licenciado Santiago Rojas presentó su contestación a la queja. El 14 de junio de 2018, el asunto fue referido a la Oficina de Inspección de Notaría[s] (ODIN). El 17 de julio de 2018, ODIN presentó su informe en el cual concluyó que el querellado no se encontraba autorizado para ejercer la notaría en Puerto Rico, por lo cual carecía de jurisdicción para atender el asunto. Ahora bien, ante visos de conducta incongruente con los estándares mínimos que requiere el Código de Ética Profesional, 4 LPRA Ap. IX, ODIN recomendó que el asunto fuera referido a la OPG.

Así, el 14 de agosto de 2018, la Secretaría de este Tribunal Supremo nos remitió copia del expediente de la queja para que realizáramos la debida investigación y emitiéramos el informe correspondiente, conforme con la Regla 14 del Reglamento del Tribunal Supremo de Puerto Rico, 4 LPRA Ap. XXI-B. El 28 de marzo de 2019, presentamos el Informe de Oficina de Procurador General en el cual informamos que contábamos con la prueba clara, robusta y convincente de que el querellado violó los Cánones 18, 35 y 38 de Ética Profesional, *supra*. Así las cosas, el 28 de junio de 2019, mediante Resolución notificada el 19 de julio de 2019, este Alto Foro nos autorizó a presentar la querella de epígrafe, la cual presentamos el 20 de julio de 2020.

Según surge del expediente de la Queja Núm. AB-2018-0116, el 5 de junio de 2012, el licenciado Santiago Rojas fue suspendido de la práctica de la notaría. Sin embargo, el 8 de agosto de 2017, el Sr. Amparo Lozada Santana (señor Lozada Santana), su esposa, la Sra. Wanda Camacho Pastrana (señora Camacho Pastrana) (en conjunto[,] los compradores), y la Sra. Zulma Figueroa Navarro (señora

Figueroa Navarro o vendedora), comparecieron a la oficina del querellado y le informaron que ya tenían convenida la compraventa de una propiedad perteneciente a la señora Figueroa Navarro. Ante ello, el licenciado Santiago Rojas les sugirió que, antes de otorgar la escritura, debían hacer un estudio de título, a los fines de conocer la titularidad sobre la propiedad de la vendedora. Pasado el Huracán María, los clientes visitaron al querellado y le solicitaron que redactara un documento para solicitar la ayuda de la Agencia Federal para el Manejo de Emergencias (FEMA, por sus siglas en inglés), ya que la propiedad había sufrido daños graves.

Ante esa situación, el 6 de octubre de 2017, los compradores, la vendedora y la señora Rosalina Nieves Berríos (señora Nieves Berríos), en calidad de testigo instrumental, se reunieron en la casa de la madre de la señora Camacho Pastrana. **Allí, el licenciado Santiago Rojas fue a tomarle las firmas a todos ellos y las huellas dactilares de los compradores. [La vendedora indicó que, en aquella ocasión, ocurrió lo siguiente: (1) el querellado le manifestó que esas "eran las escrituras"; (2) no se las dio a leer, ni las leyó en voz alta; (3) les dijo que firmara[n]. Así pues, ellos iniciaron todas las páginas y firmaron al final del documento. Luego, el querellado comenzó a hacer líneas con el bolígrafo sobre las escrituras, en particular, tachó las referencias al licenciado Rivera Lugo. Posteriormente, les dijo que le entregaran el cheque que le correspondía. Véase, Informe del Procurador General de 28 de marzo de 2019, Anejo 6].** Luego de realizarse las firmas antes señaladas, los compradores le entregaron un cheque de gerente a la vendedora por la cantidad de $15,000.00. **Asimismo, los otorgantes le pagaron al licenciado Santiago Rojas la cantidad de $360.00 en [concepto] de honorarios, sellos y estudio de título.**

Dado que la vendedora no tuvo más comunicación con el querellado, a partir del referido acto, a principios de 2018, visitó al licenciado Santiago Rojas a su oficina, para saber qué había ocurrido con la escritura. El querellado no estaba en su oficina, por lo que la señora Figueroa Navarro se encontró con el licenciado Rivera Lugo y le preguntó qu[é] podía hacer contra el querellado, porque [é]ste la había engañado.

Así las cosas, en abril de 2018, la secretaria del querellado se comunicó con el licenciado Rivera Lugo para referirle unos clientes, a saber: los compradores y la vendedora, para que otorgara una escritura pública. Este último coordinó una reunión para el 13 de abril de 2018 con los otorgantes para orientarlos, a los fines de posteriormente otorgar la escritura. Esa reunión se llevó a cabo, pero la escritura no se otorgó porque existían ciertas controversias entre las partes que no habían podido resolver.

El 27 de abril de 2018, las partes regresaron a la oficina del licenciado Rivera Lugo para la otorgación de la escritura. Ese día, el señor Lozada Santana le enseñó el documento que ellos habían firmado y el querellado había realizado. El referido documento tenía un encabezamiento que lee: "Escritura Número […] Compraventa". Además, tenía el formato exacto de una Escritura de Compraventa. A continuación, esbozamos las partes más importantes:

---------------COMPRAVENTA--------------
[…]
---------------ANTE MI------------------
[…]
--------------COMPARECE-----------------
DE LA PRIMERA PARTE---------------------
---ZULMA FIGUEROA NAVARRO […]-----------
---AMPARO LOZADA SANTANA Y WANDA CAMACHO PASTRANA-----------------------
---DE LA TERCERA PARTE Y COMO TESTIGO-----
INSTRUMENTAL: ROSALINA NIEVES BERRÍOS […]
La parte compradora ha manifestado en

presencia del Notario y de los comparecientes que son ciegos y que le acompaña un testigo instrumental, para que presencie el acto de lectura, de consentimiento de firma de este instrumento público […]. La testigo y yo, el Notario, hemos conversado con los otorgantes en este caso y hemos comprobado que todos se encuentran en pleno uso de sus facultades mentales […].
----------------DOY FE-------------------
De haber identificado a la parte vendedora mediante licencia de conducir […].
----------------EXPONEN----------------
---PRIMERO: LA PARTE VENDEDORA, es dueña en pleno dominio del inmueble que se describe a continuación […].
------------TÍTULOS Y CARGAS-------------
[…]
----------CLÁUSULAS Y CONDICIONES---------
[…]
-------------ADVERTENCIAS--------------
Las partes comparecientes aceptan esta escritura en la forma redactada, por ser conforme a lo convenido, y yo, el Notario, en cumplimiento con la Ley […].
-------------OTORGAMIENTO--------------

Es necesario indicar que, en cada página de dicho documento, constan las iniciales del señor Lozada Santana, la señora Camacho Pastrana, la señora Figueroa Navarro y la señora Nieves Berr[í]os. Al final del documento aparecen las firmas de todos estos. A su vez, al inicio del documento surgía el nombre del licenciado Rivera Lugo y se le identificaba como notario, aunque ambas expresiones aparecían tachadas. Al ver el documento, el licenciado Rivera Lugo les informó a las partes que él no tenía nada que ver con ese documento, y que, ante las actuaciones del querellado, él estaba impedido de intervenir en el asunto. Por ende, pidió a las partes que se retiraran de su oficina.

Ante lo ocurrido, el licenciado Rivera Lugo presentó la queja que dio origen a esta querella. Durante este procedimiento disciplinario, el licenciado Santiago Rojas alegó que el documento intitulado escritura fue realizado a manera de un contrato suscrito por las partes con anterioridad a su otorgamiento, que dicho documento era de su completa y absoluta responsabilidad, y que el licenciado Rivera Lugo no intervino ni autorizó la redacción y

aprobación del escrito. (Corchetes en el original y negrilla suplida).

Luego de evaluar la conducta del licenciado Santiago Rojas, a la luz de la normativa aplicable, del expediente del caso, así como del Informe presentado por la Comisionada Especial, surgen fundamentos suficientes para concluir que el abogado infringió los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

En resumen, el licenciado Santiago Rojas aceptó su responsabilidad por los tres (3) cargos imputados por violación a los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. Específicamente, en la Parte V del *Segundo Informe entre Abogados Enmendado* referente a "Controversias", el abogado admitió lo siguiente:

> i. **La conducta de preparar un documento en formato de escritura, y representándolo como tal para la firma de las partes, a pesar de que no se encontraba admitido al ejercicio de la notaría,** es contraria al Canon 18 del Código de Ética Profesional, *supra*.

> ii. **El documento preparado da o podría dar la impresión a las partes que era una escritura, que era ante un notario, y que él estaba autorizado para hacerla;** además, las partes firmaron un documento lleno de falsedades, entre ellas, que el "Notario" y las partes conversaron y comprobaron que todos se encontraban en pleno uso de sus facultades mentales; que las partes aceptaban "la escritura en la forma redactada, por ser conforme a lo convenido, y yo, el Notario, en cumplimiento con la Ley", en clara violación a los Cánones 35 y 38 del Código de Ética Profesional, *supra*. (Negrilla suplida).

Además de las admisiones del licenciado Santiago Rojas, debemos considerar unos hechos particulares que fueron reseñados en las estipulaciones de hechos en el *Segundo Informe entre Abogados Enmendado* y, a su vez, consignados como determinaciones de hechos en el Informe de la

Comisionada Especial. Desglosamos aquí los hechos específicos para una mejor comprensión de los mismos:

(a) a la fecha de los hechos, el abogado llevaba suspendido cinco (5) años del ejercicio de la notaría;

(b) éste se reunió con los "otorgantes" de la "escritura" en su oficina y no les indicó que no era notario;

(c) después fue a la casa de la madre de una de las compradoras y llevó un documento que había preparado, el cual tituló "Escritura Compraventa", y tomó las firmas a los "otorgantes" y a una testigo;

(d) escribió a manuscrito el día y el mes, e hizo firmar a una testigo porque ambos compradores eran no videntes;

(e) dicho documento tenía el nombre de un abogado-notario, el Lcdo. Manuel A. Rivera Lugo, quien se convirtió en el promovente de la *Queja*;

(f) después de que se firmara e iniciara el documento, el licenciado Santiago Rojas tachó allí mismo el nombre del promovente, el cual aparecía al principio y al final del documento;

(g) la vendedora indicó que el licenciado Santiago Rojas manifestó allí que esas "eran las escrituras", que él no se las dio a leer ni las leyó en voz alta;

(h) que siete (7) meses después, el abogado "coordinó" con el promovente referirle a la vendedora y a los compradores para otorgar una escritura;

(i) que el promovente desconocía el trasfondo de la situación de los "otorgantes", por lo que cuando se reunió con ellos entonces descubrió lo que había ocurrido y, al examinar el documento en cuestión, se negó a redactar una escritura.[19]

Coincidimos con lo expuesto por la Comisionada Especial en su Informe en torno a la violación de los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. En relación

---

[19] Véase *Informe de la Comisionada Especial al Honorable Tribunal Supremo*, pág. 17.

con el Canon 18, por razón de que el abogado no está admitido al ejercicio de la notaría desde junio de 2012, estaba impedido de asesorar a sus clientes con el fin de redactar una escritura, tomar las firmas de los "otorgantes" y más aún en un documento con el nombre de otro abogado-notario. Asimismo, las acciones del licenciado Santiago Rojas tuvieron la consecuencia de que el negocio de la compraventa se dejara sin efecto por las partes, lo que causó un grave perjuicio para éstos. En particular, debido a que las partes confiaron en que el abogado defendería sus intereses, y rendiría una labor idónea, capaz y diligente.

En cuanto al Canon 35 del Código de Ética Profesional, *supra*, el licenciado Santiago Rojas abusó de la confianza de sus clientes al engañarles cuando se hizo pasar por abogado-notario a los fines de redactar una escritura cuando estaba impedido de realizar dicha función. Así, faltó a la verdad y transgredió el deber de sinceridad y honradez que impone el mencionado canon.

En referencia al Canon 38 del Código de Ética Profesional, *supra*, el abogado actuó con conocimiento de que su conducta era contraria a la ley, lo que resultó en un grave perjuicio para sus clientes y el abogado promovente de la *Queja*. Específicamente, actuó con tal desidia que reflejó una falta de preocupación por las consecuencias de sus actos. Así pues, con su conducta socavó la integridad de la profesión legal.

Por tanto, concluimos que quedó demostrado, con prueba clara, robusta y convincente, que el licenciado Santiago Rojas actuó en contravención de los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*, y le conferimos entera deferencia a las determinaciones de la Comisionada Especial. *In re* Meléndez Mulero, *supra*, pág. 554; *In re* Colón Ortiz, *supra*, pág. 461.

IV

Corresponde, pues, que determinemos la sanción disciplinaria a imponerle al abogado por su conducta antiética. Al momento de fijar la misma, procede que evaluemos los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* Soto Peña, *supra*, págs. 680-681; *In re* Rivera Justiniano, *supra*, págs. 407-408; *In re* Ocasio Bravo, 209 DPR 1043, 1060-1061 (2022); *In re* Vélez Torres, supra, pág. 873.

En la evaluación de la sanción a aplicarse, consideramos como factores atenuantes los siguientes: (1) que en el procedimiento disciplinario se estipularon tres declaraciones juradas sobre la buena reputación del licenciado Santiago Rojas en la comunidad; (2) a pesar de

que al inicio del proceso el abogado presentó una defensa frívola de su conducta, eventualmente aceptó los cargos imputados, y admitió la violación a los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*; (3) devolvió al señor Lozada Santana unos $300 que cobró por concepto de "pronto pago", y (4) demostró aceptación y arrepentimiento sincero por la conducta imputada; en particular, aceptó los cargos y pidió disculpas en la vista en su fondo celebrada el 4 de junio de 2024.

Por su parte, contemplamos como factores agravantes los siguientes: (1) del historial disciplinario del abogado surge que éste fue suspendido de manera inmediata e indefinida de la práctica de la abogacía y la notaría mediante una Opinión *Per Curiam* del 5 de junio de 2012 por haber infringido los Cánones 35 y 38 del Código de Ética Profesional;[20] (2) la conducta no es aislada si se toman en cuenta los hechos del caso por el cual fue suspendido el 5 de junio de 2012. Específicamente, en el caso disciplinario previo, en violación al Canon 35 del Código de Ética Profesional, *supra,* el abogado suscribió unas escrituras con pleno conocimiento de la falsedad de su contenido y con dicho proceder menoscabó los derechos e

---

[20]  Mediante *Resolución* del 27 de marzo de 2015, ordenamos la reinstalación del licenciado Santiago Rojas al ejercicio de la abogacía. No obstante, a pesar de que en varias ocasiones el abogado ha solicitado su reinstalación al ejercicio de la notaría, este Tribunal ha provisto no ha lugar a dichas peticiones. Véase la nota al calce 1 de esta Opinión *Per Curiam*.

intereses de la quejosa sobre la propiedad en cuestión.[21] Además, con su conducta quebrantó los deberes de respeto, honor y dignidad que debe exhibir todo integrante de la profesión legal, esto en violación al Canon 38 del Código de Ética Profesional, *supra*; (3) medió ánimo de lucro, pues desde la primera reunión con las partes solicitó el pago de sus honorarios y el señor Lozada Santana efectuó el pago requerido, y (4) su actuación provocó un grave perjuicio a sus clientes debido a que éstos tuvieron que dejar sin efecto la compraventa de la propiedad. De igual manera, le ocasionó un grave perjuicio al promovente al punto de que el licenciado Santiago Rojas alegó que fue éste quien infringió el Canon 18 del Código de Ética Profesional, *supra*.

Así pues, luego de evaluar la totalidad de las circunstancias, principalmente el hecho de que el abogado fue suspendido previamente del ejercicio de la abogacía y la notaría respecto a otra queja, así como la seriedad de la conducta demostrada en el presente caso, en virtud de nuestro poder inherente de reglamentar la profesión legal, procede que decretemos la suspensión inmediata del

---

[21] De igual forma, en *In re* Peña, Santiago, *supra*, pág. 786, expresamos que constituyó una violación ética independiente el hecho que el abogado mintiera al proveer cierta información requerida en la declaración informativa que se solicita a todo aspirante a tomar la reválida de abogado. Esto, según indicamos, conllevó que no supliera información exacta y completa en la solicitud como parte del proceso de evaluación por la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía.

licenciado Santiago Rojas del ejercicio de la abogacía por el término de un (1) año.[22]

V

Por los fundamentos antes expuestos, suspendemos de forma inmediata al Lcdo. Daniel Santiago Rojas del ejercicio de la abogacía por el término de un (1) año.

En consecuencia, el señor Santiago Rojas deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Asimismo, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los foros a los cuales les notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal, de solicitarlo en el futuro.

Se dictará Sentencia en conformidad.

---

[22] En su Informe, la Comisionada Especial se limitó a expresar que recomendaba "la suspensión del ejercicio de la abogacía del [abogado] por el término que consideren adecuado". Véase *Informe de la Comisionada Especial al Honorable Tribunal Supremo*, pág. 22.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Daniel Santiago Rojas

(TS-12,466)

CP-2020-6

Conducta Profesional

SENTENCIA

En San Juan, Puerto Rico a 26 de marzo de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, suspendemos de forma inmediata al Lcdo. Daniel Santiago Rojas del ejercicio de la abogacía por el término de un (1) año.

En consecuencia, el señor Santiago Rojas deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Asimismo, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los foros a los cuales les notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal de solicitarlo en el futuro.

Notifíquese por correo electrónico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.   El Juez Asociado señor Kolthoff Caraballo no intervino.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo