EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|--------|--------|
| | 2026 TSPR 17 |
| Héctor L. Barreto Cintrón (TS-13,870) | 217 DPR ___ |

Número del Caso: CP-2024-0002

Fecha: 13 de febrero de 2026

Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

Representante legal del querellado:

    Por derecho propio

Comisionada Especial:

    Hon. Crisanta González Seda

Materia: Conducta Profesional - Suspensión inmediata del ejercicio de la abogacía y la notaría por el término de un año por infringir el Canon 9 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Héctor L. Barreto Cintrón       CP-2024-2       Conducta
       (TS-13,870)                               Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 13 de febrero de 2026.

La crítica judicial sana y oportuna es un medio necesario y efectivo para mantener a los jueces alertas y atentos al estricto cumplimiento de sus funciones. Pero no debe traspasar los linderos de la verdad, la honradez y la corrección en el curso de su crítica porque no hay nada que tienda más a destruir el justo balance de la conciencia judicial y a deteriorar y obstaculizar la imparcial y recta administración y el libre curso de la justicia que una crítica falsa, injustificada y viciosa. *In re* Andréu Ribas, 81 DPR 90, 120 (1959).

Una vez más tenemos la obligación de ejercer nuestra autoridad disciplinaria sobre un abogado por su conducta antiética. En esta ocasión, por

infringir el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, al realizar unas expresiones en varios escritos presentados ante el foro de primera instancia y dirigidos a imputar ciertas actuaciones a un Juez Superior.

En conformidad con los fundamentos que expondremos a continuación, procedemos a suspender de forma inmediata al Lcdo. Héctor L. Barreto Cintrón (licenciado Barreto Cintrón o abogado) del ejercicio de la abogacía y la notaría por el término de un (1) año.

I

El licenciado Barreto Cintrón fue admitido al ejercicio de la abogacía el 30 de enero de 2002 y prestó juramento como notario el 16 de julio de 2002.[1]

---

[1] En el asunto AB-2005-270, la entonces Jueza Superior, Hon. Waleska I. Aldebol Mora, nos remitió una *Resolución* que había emitido el 30 de septiembre de 2005 en relación con una alegada conducta inapropiada del Lcdo. Héctor L. Barreto Cintrón (licenciado Barreto Cintrón o abogado) ante el foro de primera instancia. Luego de evaluar dicho asunto, el 7 de abril de 2006 emitimos una *Resolución* mediante la cual devolvimos el caso al foro primario para que éste ejerciera su autoridad judicial y tomara la acción correspondiente.

En cuanto al caso AB-2015-171, el 18 de noviembre de 2016 decretamos el archivo de la queja. Asimismo, exhortamos al licenciado Barreto Cintrón y al promovente, Lcdo. Ricardo Collazo Suárez, a que en el futuro debían mantener un trato cortés y de respeto entre ambos, y con sus compañeros de profesión.

En relación con la queja AB-2020-69, el 10 diciembre de 2021 emitimos una *Resolución* mediante la cual censuramos al abogado por conducta violatoria de los Cánones 18, 19 y 35 del Código de Ética Profesional, 4 LPRA Ap. IX. Además, se le apercibió de que en el futuro debía cumplir estrictamente con el mencionado Código para evitar conductas como la que provocó la presentación de la queja. De igual manera, se le advirtió que su repetición daría lugar a sanciones severas. En consecuencia, se ordenó el archivo de la queja.

En torno al caso AB-2020-83, el 10 de diciembre de 2021 emitimos una *Resolución* en la que ordenamos el archivo de la queja. No obstante, exhortamos al licenciado Barreto Cintrón que en el futuro siguiera la recomendación del Canon 24 del Código de Ética Profesional, *supra*, y de la jurisprudencia, para que los contratos de servicios profesionales se hicieran por escrito y al inicio de la relación profesional.

Por último, referente al asunto AB-2022-16, el 28 de abril de 2023 emitimos una *Resolución* en la que censuramos al abogado por conducta violatoria del Canon 27 del Código de Ética Profesional, *supra*. Asimismo,

**A. Trasfondo fáctico y procesal de la *Queja* AB-2022-229**

   **1. Alegaciones de la *Queja***

Esta *Queja* se originó con una *Resolución* emitida el 11 de octubre de 2022 por el Hon. Ismael Álvarez Burgos (juez Álvarez Burgos) en un pleito civil,**2** mediante la cual éste refirió el asunto ante este Tribunal por posibles violaciones éticas del licenciado Barreto Cintrón. Específicamente, el juez Álvarez Burgos hizo el referido luego de que el abogado realizara por escrito unas expresiones dirigidas al foro de primera instancia, al imputarle "conducta ilegal, parcializada, prejuiciada, favoritismo y corrupción judicial, entre otras, al juez [Álvarez Burgos]"**3** y, a su vez, solicitara la inhibición del mencionado juez en el referido caso.

A continuación reproducimos *in extenso* lo expuesto por el juez Álvarez Burgos en su *Resolución* referente a las expresiones del licenciado Barreto Cintrón, las cuales catalogó como "ataques irrespetuosos y ofensivos a la integridad, dignidad y honra del Juez suscribiente, que lastiman la reputación personal y/o institucional de la Judicatura o Poder Judicial, que ameritan ser atendidas por

---

se le apercibió que en el futuro debía cumplir estrictamente con el Código de Ética Profesional para evitar conductas como la que provocó la presentación de la queja. Además, se le advirtió que su repetición daría lugar a sanciones severas.

**2**   Héctor L. Barreto Cintrón v. Arco Construction Corp., Inc., Caso Civil Núm. CA2021CV00847. Este pleito comenzó con la *Demanda* presentada -por derecho propio- por el abogado el 8 de abril de 2021 en contra de Arco Construction Corp., Inc. y FirstBank de Puerto Rico, por cobro de honorarios, incumplimiento de contrato, interferencia torticera, y daños y perjuicios.

**3**   *Informe de la Comisionada Especial*, pág. 2.

el Tribunal Supremo". (Énfasis omitido).[4] En particular, el juez Álvarez Burgos expresó lo siguiente:

> El 27 de septiembre de 2022, el Lcdo. Barreto Cintrón presentó un escrito titulado [Urgente moción de inhibición y/o recusación del Juez Ismael Álvarez Burgos por claro favoritismo, conducta parcializada y prejuiciada a favor de la parte demandada Arco Construction Company, y por serias y graves irregularidades procesales y errores intencionales de derecho].
>
> Del inciso 2 del referido escrito, se imputa al Juez suscribiente a raíz de una determinación judicial emitida, que la misma fue "deliberadamente ilegal y antiética"; en el inciso 4, se hace otra mención para expresar que una orden emitida, se realizó de manera "deliberadamente ilegal y antiética" y en el mismo inciso señala que "Solo Dios sabe lo que verdaderamente ocurrió durante ese término para que el Juez Ismael Álvarez Burgos incidiera en conducta tan antiética, parcializada, prejuiciada e ilegal de manera tan flagrante, evidente y obvi[a].
>
> Según se desprende de los autos, en dicho inciso 4, el abogado continúa con sus imputaciones e imputa lo siguiente[:] "Juez Álvarez [Burgos] quien ya prejuzgó el caso y se dispone a desestimar el caso negándole el derecho a la parte demandante al descubrimiento de prueba, al debido proceso de ley y a su día en corte[,] pues ya predeterminó perpetrar lo que a todas luces se vislumbra es un deliberado e intencional abuso de discreción, error de derecho y conseguir el fracaso y aborto de la justicia".
>
> En el inciso 6, se expresa lo siguiente[:] "el Juez Álvarez Burgos dejó de ser un ente neutral para convertirse en parte del equipo legal y abogado de ARCO, por lo cual ante la patente y manifiesta parcialidad y prejuicio continuar los procedimientos con el Juez Álvarez [Burgos] pretendiendo que es un juzgador neutral e imparcial en este caso cuando claramente no lo es, redundaría en una pérdida de recursos judiciales y un ejercicio en futilidad".

---

[4] *Resolución y referido al Tribunal Supremo de Puerto Rico por posibles violaciones éticas del Lcdo. Héctor L. Barreto Cintrón*, pág. 2.

Se reproducen, además, los incisos 10, 11, 12, 13, 15, 17, 18, 19, 21, 23, 24, 26, 27, 28, 29, 30, 31, 32, 34 y 35 del escrito ante[s] mencionado por constituir ataques irrespetuosos y ofensivos a la integridad, dignidad y honra que lastiman la reputación personal y/o institucional de la Judicatura o Poder Judicial, que ameritan ser evaluados por el Tribunal Supremo.

10. "Con su revés inexplicable e irracional del Juez Ismael Álvarez Burgos ha dejado al demandante en estado de indefensión a sabiendas de que sin el descubrimiento de prueba[,] que por ley el demandante tiene derecho[,] lo que se propone hacer es desestimarle el caso sumariamente al demandante. La Orden del Juez le ha hecho un daño al caso que si no se repara y se deja sin efecto el Juez Álvarez [Burgos] ha descarrilado el curso de la justicia ilegalmente".

11. "En efecto[,] el Juez Ismael Álvarez Burgos se convirtió en el abogado de la demandada ARCO Construction al determinar protegerles para que no descubran la prueba solicitada, inter alia, las facturas de teléfono entre enero, febrero y marzo 2021, en violación al derecho de la parte demandante a un descubrimiento de prueba justo, amplio y liberal".

12. ["]Con la referida decisión[,] el Juez Álvarez [Burgos] le [s]entenció el caso a muerte de la manera más prejuiciada y parcializada que hemos visto en nuestra carrera de más de veintidós años de profesión legal".

13. "El Juez Álvarez [Burgos] ha colocado el caso de forma prejuiciada, parcializada y arbitraria en la posición de desestimarlo mientras que le ha negado injusta e ilegalmente el derecho constitucional al descubrimiento de prueba real y verdadero ("meaningful") que le asiste [a] la parte demandante, por lo que esta intervención es necesaria en esta etapa["].

15. "La parte demandada y el Juez Álvarez Burgos han dedicado varios escritos a mencionar a un supuesto "tercero", pero en ninguno de esos escritos ni ARCO ni el Juez ni tan siquiera han identificado el supuesto tercero ni han discernido sobre la demás información solicitada que nada tiene que ver con las facturas requeridas. Sobre las contestaciones, el superficial y engañoso argumento del tercero nada tiene que ver y en nada incide por irrelevante el deber que tiene ARCO de

contestar responsivamente. Como vemos, todo se trata de un argumento falaz por ser un razonamiento circular y el Juez Álvarez Burgos adoptó y avaló tal clara falacia de ARCO y determinó proteger las facturas de llamadas telefónicas de ARCO y protegió que ARCO no divulgara el nombre del [']proveedor de servicios['] dejando de ser un ente neutral y convirtiéndose en el abogado de ARCO Construction["].

17. "El revés del Juez Álvarez [Burgos] no solamente es absurdo, ilusorio y falso[,] sino que rebasa los ámbitos de error para ser una protección a ARCO parcializada, prejuiciada y antiética que definitivamente descalifica al Juez para presidir este caso".

18. "Es así de sencillo. Adoptar como el Juez hizo de tan falaz y fácilmente rebatible argumento del tercero sin interesar la identidad del tercero es abdicar a la neutralidad y la imparcialidad y convertirse en el abogado de la demandada ARCO".

19. "[L]o que resulta increíble, parcializado, arbitrario y caprichoso que el Juez Álvarez Burgos haya optado por creerle a ARCO sus representaciones falsas que han inducido a error deliberado e intencional del Tribunal, por conducto del Juez Ismael Álvarez Burgos".

21. ["]La falta de transparencia y protecciones indebidas, improcedentes e impropias a ARCO y su disposición en violar tanto el derecho al descubrimiento de prueba como el debido proceso de ley, contradecir las órdenes ya dictadas correctas en derecho de dos (2) jueces incluyendo al propio Juez Ismael Álvarez Burgos, todo ello para favorecer a ARCO reflejan aún más la parcialidad, prejuicio y favoritismo del Juez Álvarez Burgos hacia la parte demandada ARCO Construction y el ánimo prevenido del referido Juez en contra del suscribiente[,] lo cual se trata de una animosidad personal en contra de la parte demandante y su caso".

23. "Tal proceder ilegal por inconstitucional, ha [trastocado] lo ya determinado y reconsiderado por dos (2) jueces inclusive el propio Juez Álvarez Burgos maculando la integridad y pureza de los procedimientos y el proceso de forma altamente irregular e impropia de modo claramente parcializado, prejuiciado y arbitrario para favorecer a ARCO Construction de manera ilegal y

en violación al más elemental y básico derecho constitucional del demandante al debido proceso de ley…".

24. ["]Se imputa que "[e]l Juez Ismael Álvarez Burgos […] permitiendo que ARCO manipule y controle los procedimientos, juegue a esconder con el descubrimiento de prueba, controle los procedimientos de descubrimiento de prueba a su arbitrio y capricho y [']se salga con la suya['], ni tan siquiera divulgue […] entonces estamos ante una situación insostenible e inaceptable por ser contraria a derecho e ilegal".

26. "La determinación objeto de esta moción no solamente desvirtúa y subvierte de manera demasiado irregular y altamente impropia el estado de los procedimientos en este caso, sino que además desvirtúa, subvierte y transgrede el estado de derecho que todo abogado conoce en torno al descubrimiento de prueba y el debido proceso de ley constitucional sustantivo".

27. "El abogado compareciente tiene el deber legal y ético de reportar prontamente toda conducta antiética judicial que refleje favoritismo, parcialidad, prejuicio, abuso y/o corrupción, sea o no deliberada e intencional".

28. "Este tipo de mala conducta judicial tan obvia y flagrante le resta credibilidad y menoscaba y lacera la confianza y la fe de la ciudadanía en la integridad, transparencia e imparcialidad de nuestro sistema de justicia["].

29. ["]Dado el proceder claramente inconstitucional e ilegal del Juez Álvarez Burgos y de que se puede percibir el prejuicio y parcialidad[,] no podemos ni debemos esperar a que el Juez Álvarez Burgos le dicte sentencia sumaria parcializada y prejuzgada por favoritismo a ARCO por alegada falta de prueba que denegó descubrir en contra de su propia determinación fundamentada y la del Juez previo dictada el 30 de septiembre de 2021 hace casi un año atrás".

30. ["]Ciertamente la conducta contradictoria del Juez Ismael Álvarez Burgos y todo el esfuerzo del Juez Álvarez [Burgos] para reabrir lo determinado desde hace un año y confirmado por el propio Juez Álvarez [Burgos] con tal de favorecer y proteger ilegalmente a ARCO refleja al menos una desconcertante y clara apariencia de conducta impropia, apariencia de parcialidad, apariencia

de favoritismo, apariencia de prejuicio, apariencia de arbitrariedad, por lo que procede la inhibición y/o recusación del Juez Ismael Álvarez Burgos del caso["].

31. "Es claro del tracto procesal habido que la intervención del Juez Ismael Álvarez Burgos refleja en su revés una motivación ulterior inexplicable que obedece a una predisposición de soslayar la ley y los derechos constitucionales y el debido proceso de ley de la parte demandante con tal de favorecer a ARCO a ultranza".

32. "Los tribunales no pueden resolver los casos a base de conformar y manipular los hechos, los hechos procesales y el derecho a una predeterminada y prejuiciada decisión[,] pues el derecho no es meramente un instrumento de negocios[,] sino un instrumento para servir a la justicia".

34. ["Y] esperamos mayor seriedad e integridad del Juez Ismael Álvarez Burgos[,] pero ha demostrado ser injusto, parcializado y prejuiciado y la patente falta de integridad hace necesaria su inhibición o recusación. La mala conducta del Juez Álvarez [Burgos] es una flagrante burla al mínimo de estándar de integridad judicial y a los derechos civiles y constitucionales más sagrados y básicos en nuestro ordenamiento jurídico cuya consecuencia forzosa es esta moción de inhibición y recusación["].

35. ["]Dado lo anterior, debido a la referida mala conducta y proceder antiético del Juez Ismael Álvarez Burgos en este caso no nos deja otra posible alternativa que presentar este escrito toda vez que no hay forma ni manera alguna de que la parte demandante tenga un juicio justo e imparcial ante el Juez Ismael Álvarez Burgos, por lo que se solicita su inhibición y se exige la recusación inmediata del Juez Ismael Álvarez Burgos["]. (Negrilla y citas omitidas). *Resolución y referido al Tribunal Supremo de Puerto Rico por posibles violaciones éticas del Lcdo. Héctor L. Barreto Cintrón*, págs. 2-7.

En respuesta a la solicitud de inhibición presentada por el abogado el 27 de septiembre de 2022, el juez Álvarez Burgos emitió una *Resolución* el 29 de septiembre de 2022 en la que consignó las razones por las cuales no se inhibiría de atender

el mencionado caso. Así las cosas, refirió el asunto a la atención de la Hon. Rosa Benítez Álvarez, Jueza Administradora Regional, para su disposición.[5] No obstante, mientras el asunto estaba ante la consideración de la mencionada Jueza Administradora, en la tarde del 29 de septiembre de 2022, el licenciado Barreto Cintrón presentó una **segunda solicitud de inhibición**, la cual tituló "Moción de inhibición y/o recusación del Juez Ismael Álvarez Burgos por animosidad, rencor y agenda personal en contra del suscribiente".

Según esbozó el juez Álvarez Burgos en su *Resolución* del 11 de octubre de 2022, las expresiones realizadas por el abogado en dicha segunda moción de inhibición constituían "un segundo ataque e imputaciones irrespetuosas y ofensivas a la integridad, dignidad y honra que lastiman la reputación personal del suscribiente y/o institucional de la Judicatura o Poder Judicial". (Énfasis omitido).[6] Ante ese escenario, el juez Álvarez Burgos refirió el asunto a este Tribunal para la acción correspondiente. Específicamente, reprodujo lo que consideró como ataques por parte del licenciado Barreto Cintrón, por lo cual aquí se transcribe textualmente:

> Inciso 2. "[…] el Juez Ismael Álvarez Burgos hizo unas apasionadas expresiones personalistas e imputaciones falsas e infundadas hacia el abogado suscribiente y expresó una clara pasión y rencor en contra del abogado suscribiente en lo que a

---

[5]    Valga señalar que, el 6 de octubre de 2022, la Hon. Nereida Feliciano Ramos, por encomienda de la Hon. Rosa Benítez Álvarez, declaró no ha lugar la solicitud de inhibición presentada por el licenciado Barreto Cintrón el 27 de septiembre de 2022.

[6]    *Resolución y referido al Tribunal Supremo de Puerto Rico por posibles violaciones éticas del Lcdo. Héctor L. Barreto Cintrón*, pág. 8.

todas luces refleja en su escrito una animosidad personal y agenda personal en contra del abogado suscribiente["].

Inciso 3. "La pasión, rencor y odio personal que en su Resolución exhibe el Juez Ismael Álvarez Burgos contra el abogado suscribiente hace insostenible que dicho funcionario público continúe presidiendo este procedimiento, por lo cual forzosamente debe inhibirse por al menos la apariencia de pasión, prejuicio y parcialidad y animosidad y agenda personal en contra del abogado suscribiente, lo cual resulta evidente del contenido de la Resolución y por sus expresiones y acciones según surgen de los autos". (Énfasis omitido). *Resolución y referido al Tribunal Supremo de Puerto Rico por posibles violaciones éticas del Lcdo. Héctor L. Barreto Cintrón*, pág. 8.

Unas dos horas después de esa segunda moción, el mismo 29 de septiembre de 2025, el licenciado Barreto Cintrón presentó una **tercera solicitud de inhibición**, en la cual, según expuso el juez Álvarez Burgos en su *Resolución*, el abogado "continuó con su patrón de atacar la integridad, dignidad y honra que lastiman la reputación personal del suscribiente y/o institucional de la Judicatura o Poder Judicial". (Énfasis omitido).[7] Tales expresiones se incluyen a continuación:

Inciso 3. "Las expresiones autoserviles e infundadas y meramente conclusivas del Juez Álvarez [Burgos] tratan de desviar la atención de la animosidad personal y agenda personal del Juez Ismael Álvarez Burgos hacia el suscribiente que surgen claramente de las expresiones irrespetuosas y abusivas en la Resolución y del prejuicio y parcialidad y conducta abusiva exhibidos por dicho funcionario y servidor público y que surgen claramente de los autos".

Inciso 4. "La pasión, rencor y odio personal y la predisposición a intimidar y castigar al

---

[7]     *Resolución y referido al Tribunal Supremo de Puerto Rico por posibles violaciones éticas del Lcdo. Héctor L. Barreto Cintrón*, pág. 8.

suscribiente -quien se debe aclarar siempre ha sido respetuoso y [ha] utilizado el lenguaje legal necesario y apropiado, según la moción lo requiera- meramente por quejarse por la conducta antiética del Juez Álvarez Burgos que en su Resolución exhibe el Juez Ismael Álvarez Burgos contra el abogado suscribiente hace insostenible que dicho funcionario público continúe presidiendo este procedimiento, por lo cual forzosamente debe inhibirse por al menos la apariencia de pasión, prejuicio y parcialidad y animosidad y agenda personal en contra del abogado suscribiente, lo cual resulta evidente del contenido de la Resolución y por sus expresiones y acciones según surgen de los autos". (Énfasis omitido). *Resolución y referido al Tribunal Supremo de Puerto Rico por posibles violaciones éticas del Lcdo. Héctor L. Barreto Cintrón*, págs. 8-9.

En conformidad con lo antes expuesto, el juez Álvarez Burgos concluyó en su *Resolución* que las expresiones suscritas por el licenciado Barreto Cintrón representaban una conducta que no se caracterizaba por el mayor respeto al tribunal y constituía "un ataque injustificado contra la integridad, reputación, dignidad y honra del Juez suscribiente y contra el buen orden de la administración de la justicia…". (Énfasis omitido).[8] Así pues, refirió el asunto ante este Tribunal junto con los escritos pertinentes.

## 2. Trámite previo a la *Contestación a la Queja*

Como parte del trámite de la *Queja*, el 17 de noviembre de 2022 se le concedió al abogado un término de diez (10) días, contado a partir de la notificación de la comunicación, para que contestara los planteamientos en su contra. Así pues, el 28 de noviembre de 2022, el licenciado Barreto

---

[8]    *Resolución y referido al Tribunal Supremo de Puerto Rico por posibles violaciones éticas del Lcdo. Héctor L. Barreto Cintrón*, pág. 9.

Cintrón solicitó una prórroga de treinta (30) días para contestar la *Queja* y así fue concedido el 30 de noviembre de 2022. No obstante, el 3 de enero de 2023, el abogado solicitó una prórroga adicional -por razón de enfermedad- para contestar y, en vista de ello, el 9 de enero de 2023 se le concedió un término adicional de treinta (30) días para dicho trámite.

Nuevamente, el 7 de febrero de 2023, el licenciado Barreto Cintrón solicitó una prórroga adicional para presentar su *Contestación a la Queja* debido a que su condición de salud empeoró y desembocó en una hospitalización. Así las cosas, el 13 de febrero de 2023 se le concedió un término adicional de quince (15) días para someter su contestación. Además, se le apercibió de que su incomparecencia en el término provisto podía conllevar el referido de la *Queja* ante el Pleno del Tribunal para la acción correspondiente.

Transcurrido el término concedido sin que el abogado contestara la *Queja*, el 17 de marzo de 2023 emitimos una *Resolución* mediante la cual le concedimos un término de diez (10) días para que mostrara causa por la cual no se le debía suspender del ejercicio de la profesión legal por incumplir con las órdenes de este Tribunal.

3. ***Contestación a la Queja***

El 27 de marzo de 2023, el licenciado Barreto Cintrón contestó la *Queja* en su contra. En particular, negó que haya incurrido en conducta que infrinja el Código de Ética Profesional y reiteró los señalamientos que ha realizado en

contra del juez Álvarez Burgos. Además, rechazó que sus expresiones hayan sido indecorosas, soeces o irrespetuosas, así como planteó que "fueron expresiones protegidas por ser la verdad".[9] De igual forma, expuso que utilizó lenguaje técnico-legal que se usa en la profesión legal en el contexto de las solicitudes de inhibición y recusación, así como los términos "integridad" y "parcialidad" que se utilizan en el formulario de evaluación de la Comisión de Evaluación Judicial.[10]

Asimismo, el abogado manifestó que el Tribunal de Apelaciones ha realizado varios señalamientos, apercibimientos y advertencias al juez Álvarez Burgos referente "al mal manejo de los casos ante su consideración".[11] Por último, solicitó que se investigara la alegada conducta antiética desplegada por el juez Álvarez Burgos en el mencionado pleito, así como que se archivara la *Queja* en su contra.

Así las cosas, el 28 de abril de 2023, emitimos una *Resolución* mediante la cual referimos el asunto a la Oficina del Procurador General para la investigación y el informe correspondiente.[12]

---

[9]   *Contestación a la Queja*, pág. 2.

[10]   El abogado incluyó como anejo el "Formulario de evaluación para abogados(as), procuradores(as) y fiscales – Tipo I". *Contestación a la Queja*, Anejo 1.

[11]   *Contestación a la Queja*, pág. 4.

[12]   El archivo en autos de copia de la *Resolución* fue el 1 de mayo de 2023.

**4. Informe de la Oficina del Procurador General y presentación de la *Querella***

El 31 de agosto de 2023, la Oficina del Procurador General presentó su Informe. En éste, reseñó los asuntos relacionados con la *Queja* y la *Contestación a la Queja*. En particular, esbozó un resumen completo del asunto en cuestión, el que aquí citamos *in extenso*:

> De un examen del expediente judicial del Caso Núm. CA2021CV00847 surge que el licenciado Barreto Cintrón demandó, por derecho propio, a Arco y FirstBank. En lo pertinente, una de sus alegaciones era la existencia de una relación profesional entre él y Arco, la cual este último negó. Como consecuencia, el promovido solicitó el historial de llamadas de Arco para los meses en que presuntamente tuvieron comunicación sobre el asunto contratado. Surge que, en la vista de 28 de septiembre de 2021, el tribunal, a través del Juez Maldonado García, ordenó a Arco a producir los registros de llamadas telefónicas de los tres meses solicitados, y al promovido a presentar la moción correspondiente, de entender que Arco no había cumplido adecuadamente con el interrogatorio cursado. Luego de esto, no es hasta que Arco presentó su moción de sentencia sumaria de 21 de julio de 2022 y el tribunal concedió veinte días al licenciado Barreto Cintrón para replicar, que este último informó al tribunal que Arco no había cumplido con el descubrimiento de prueba, por lo que solicitó sanciones y un término adicional para contestar la moción de sentencia sumaria, una vez Arco cumpliera. Ante estas mociones, el 24 de agosto de 2022, el Juez Álvarez Burgos impuso $250 de sanciones a Arco por no contestar el descubrimiento de prueba, le concedió diez días para ello, y paralizó los incidentes relacionados a la solicitud de sentencia sumaria hasta [que] culminara el descubrimiento. Al día siguiente, Arco solicitó reconsideración, la cual se denegó el 28 de agosto de 2022. Ahora bien, el 5 de setiembre de 2022, en atención a una moción del promovido, el promovente concedió diez días a Arco para que expusiera las razones por las cuales no procedía que este contestara el interrogatorio por no tener la información o los documentos en su posesión. Luego de que Arco cumpliera con la orden emitida, el 26 de septiembre de 2022, el Juez Álvarez

Burgos acogió la moción de reconsideración de Arco y dejó sin efecto las órdenes emitidas el 24 de agosto de 2022.

Inconforme con esta última determinación del promovente, el licenciado Barreto Cintrón presentó sus tres escritos solicitando la inhibición, en los cuales, en síntesis, imputó al juez Álvarez Burgos haber actuado con ilegalidad, parcialidad, prejuicio, y favoritismo al dejar sin efecto la orden para que Arco cumpliera con el descubrimiento de prueba. Además, indicó que el promovente se parcializó de tal manera con Arco que se convirtió en su abogado y resolvió de manera premeditada y deliberada para lograr que se le desestimara su demanda sumariamente. Incluso, sugirió que el juez Álvarez Burgos tuvo una motivación ulterior o presiones externas al proceso judicial que conllevaron que este reconsiderara. A su vez, en su contestación a queja, tildó el proceder del Juez Álvarez Burgos como uno "altamente sospechoso", a "cuartos cerrados" y que "juga[ba] a esconder con la prueba junto con la parte demandada". (Cita omitida). *Informe de la Oficina del Procurador General de Puerto Rico*, págs. 21-22.

En vista de lo anterior, la Oficina del Procurador General indicó que de un examen del expediente del caso civil y de la *Contestación a la Queja* surgía que "el único motivo del promovido para imputar parcialidad, prejuicio, falta de integridad, o conducta ilegal al promovente fue su inconformidad con la determinación del 26 de septiembre de 2022, por entenderla contraria a derecho".[13] Al respecto, apuntó que ante esa inconformidad con el proceder del juez Álvarez Burgos, el licenciado Barreto Cintrón "prefirió presentar varias mociones solicitando la inhibición e imputando conducta ilegal, parcializada, prejuiciada,

---

[13] *Informe de la Oficina del Procurador General de Puerto Rico*, pág. 22.

favoritismos y corrupción judicial al juez Álvarez Burgos"[14] en lugar de esbozar sus planteamientos de forma persuasiva para prevalecer en su posición o recurrir ante un foro de mayor jerarquía.

Además, la Oficina del Procurador General señaló que no surgía del expediente la prueba contundente e indubitada para las imputaciones realizadas por el abogado. Sobre esto, añadió que "de [é]ste haber entendido legítimamente que había una parcialidad y prejuicio que ameritaba la inhibición del juez Álvarez Burgos, debió presentar sus alegaciones de una manera respetuosa, sin la utilización de un lenguaje repetitivo y ofensivo contra la dignidad del promovente […]".[15] Por todo lo anterior, concluyó que el licenciado Barreto Cintrón infringió el Canon 9 del Código de Ética Profesional, *supra*, al utilizar lenguaje irrespetuoso, y haber atacado la dignidad del juez Álvarez Burgos y del tribunal sin tener la evidencia contundente e indubitada para ello. Ante esto, y dado el historial de sanciones disciplinarias en relación con el abogado, la Oficina del Procurador General recomendó la imposición de una sanción severa, que pudiera incluir la censura enérgica o la suspensión del ejercicio de la abogacía.

El 18 de septiembre de 2023 emitimos una *Resolución* mediante la cual le concedimos a las partes un término de veinte (20) días para que se expresaran sobre el *Informe de*

---

[14] Íd.

[15] Íd.

*la Oficina del Procurador General* (Informe).**16**   Allí les apercibimos que, de no comparecer en el término provisto, se entendería que se allanaban a las recomendaciones formuladas en el mencionado Informe.

El 10 de octubre de 2023, el licenciado Barreto Cintrón solicitó una prórroga, pues alegó que estuvo imposibilitado de redactar su oposición al Informe por razón de enfermedad. No obstante, adelantó varios señalamientos en cuanto a dicho Informe, entre éstos que el mismo estaba incorrecto, parcializado y que era una tergiversación.  También indicó que el Informe era una persecución maliciosa y selectiva como acto de represalia por parte del Estado, esto por auscultar y delatar la conducta antiética del juez Álvarez Burgos. Asimismo, solicitó el nombramiento de un Comisionado Especial que fuera independiente al Poder Judicial "debido a la conexión de dicha rama de gobierno con la contratista F&R Construction Group, Inc., siendo dicha entidad la contratista que construyó el Centro Judicial de Caguas y siendo esa entidad [la] parte contratante junto con ARCO Construction Corp., según se alega en la demanda del caso originario […]".**17** Por último, solicitó que se le permitiera realizar un descubrimiento de prueba limitado con el fin de probar su inocencia.

---

**16**   El archivo en autos de copia de la *Resolución* fue el 20 de septiembre de 2023.

**17**   *Solicitud de prórroga para presentar por razón de enfermedad y otros remedios*, pág. 2.

A la luz del Informe y la moción presentada por el abogado, el 8 de diciembre de 2023 le ordenamos a la Oficina del Procurador General que presentara la *Querella*.[18]

Así las cosas, el 8 de febrero de 2024, la Oficina del Procurador General presentó la *Querella.* En ésta, reiteró la relación de hechos y el análisis expuestos en su Informe del 31 de agosto de 2023. A su vez, expuso que de los hechos del caso surgía prueba clara, robusta y convincente de que el abogado incurrió en conducta violatoria del Código de Ética Profesional. En particular, presentó el siguiente cargo:

> El Lcdo. Héctor L. Barreto Cintrón infringió el Canon 9 de Ética [P]rofesional, 4 LPRA Ap. IX, en sus expresiones al tribunal, en el Caso [Civil] Núm. CA2021CV00847, al imputarle conducta ilegal, parcializada, prejuiciada, favoritismo y corrupción judicial, entre otras, al juez Álvarez Burgos, sin motivos fundados ni evidencia contundente e indubitada. La conducta del querellado no se caracterizó por el mayor respeto al tribunal, ni este cumplió con su obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales.

Asimismo, la Oficina del Procurador General señaló varios agravantes, específicamente relacionados con el historial disciplinario del abogado, así como que éste no ha aceptado la conducta incurrida, no ha demostrado arrepentimiento y su conducta no aparenta ser una aislada.

En conformidad con la Regla 14(f) de nuestro Reglamento, 4 LPRA Ap. XXI-B, el 9 de febrero de 2024 se emitió un *Mandamiento para contestar Querella sobre conducta*

---

[18] El archivo en autos de copia de la *Resolución* fue el 12 de diciembre de 2023.

*profesional* concediéndole término al abogado para ello.[19] Así las cosas, el 26 de febrero de 2024, el licenciado Barreto Cintrón solicitó una prórroga para contestar y así la concedimos mediante *Resolución* del 8 de marzo de 2024. Más adelante, el 8 de abril de 2024 solicitó una prórroga adicional y así fue concedida mediante *Resolución* del 15 de abril de 2024.[20]

### 5. Contestación a la *Querella*

El 6 de mayo de 2024, el abogado presentó su contestación a la *Querella*. En ésta reiteró sus alegaciones de que el juez Álvarez Burgos actuó de forma tal que creó la apariencia de conducta impropia en su proceder en el caso Civil Núm. CA2021CV00847. Expuso, además, que a partir de septiembre de 2022 y en relación con el mencionado caso, el juez Álvarez Burgos tomó "decisiones en 'cuartos oscuros' faltas de justificación y totalmente faltas de transparencia […]".[21]

Asimismo, el licenciado Barreto Cintrón planteó nuevamente que el curso del caso en cuestión constituye "un claro ejemplo de persecución maliciosa y prosecución selectiv[a] y siniestra por parte del Estado".[22] A su vez,

---

[19] La notificación del *Mandamiento para contestar Querella sobre conducta profesional* fue el 12 de febrero de 2024.

[20] El archivo en autos de copia de la *Resolución* fue el 16 de abril de 2024.

[21] *Contestación a la Querella por señalamientos del suscribiente sobre conducta desplegada por el juez Ismael Álvarez Burgos*, pág. 4.

[22] Íd., pág. 5. Al respecto, el licenciado Barreto Cintrón señaló lo siguiente:

"[…] Al Estado le molesta que se llamen las cosas por su nombre, pues está documentado en un informe reciente de

recalcó su petición del nombramiento de un Comisionado Especial que fuera independiente al Poder Judicial y que se le permitiera llevar a cabo un descubrimiento de prueba limitado para probar su inocencia, pues la oportunidad de contestar la queja no es suficiente debido proceso de ley y, en consecuencia, resulta inconstitucional.

En su contestación, el abogado también añadió lo siguiente referente a la moción de inhibición presentada ante el juez Álvarez Burgos:

> […] El lenguaje utilizado por el suscribiente en el contexto de una moción de inhibición es apropiado y los términos son términos legales "jugar a esconder con la prueba", determinaciones hechas a "cuartos cerrados" y "oscuros" o en la "oscuridad"[,] "parcialidad", "prejuicio" en un revés infundado y altamente irregular, es[o]s son precisamente los términos contenidos y expresiones utilizados y empleados en toda moción de inhibición[,] entonces sancionar al suscribiente por expresar la verdad en los términos legales precisos es un abuso de poder y acto de represalia y de revanchismo que no debe existir. La moción de inhibición puede incluir lenguaje fuertemente y sincero sobre la conducta parcializada y hostil y los abusos de discreción y conducta ilegal por inconstitucional por parte de un juez que claramente incurre en tal comportamiento, como surge de una evaluación y análisis objeti[v]o del cúmulo de órdenes y determinaciones del juez quejoso en comparación de la Ley del Caso claramente establecida en los autos del caso originario antes de que el juez quejoso presidiera el mismo. Al funcionario público que tiene un patrón de conducta documentada de desprecio por la ley y de forma

---

Puerto Rico por las Naciones Unidas que la judicatura de Puerto Rico tiene un problema real de falta de transparencia y de falta de independencia ejemplificado por este caso.

. . . . . . . .

[…] En realidad este caso luce como una persecución selectiva del Estado a modo de represalia por una moción de inhibición que planteó serios y evidentes señalamientos contra un juez con bastante historial previo de este tipo de conducta". Íd., págs. 5-6.

insubordinada de las propias órdenes y del debido proceso de ley, con actuaciones fuera de la ley, que se conduce en sus quehaceres públicos falto de transparencia y toma decisiones en "cuartos oscuros" no le puede molestar luego que un ciudadano adversamente afectado por tales violaciones le señale su mala conducta y su abuso de su discreción y abuso de poder. El referido es pues un acto de represalia por "whis[t]leblowing". *Contestación a la Querella por señalamientos del suscribiente sobre conducta desplegada por el juez Ismael Álvarez Burgos*, pág. 11.

Por último, el licenciado Barreto Cintrón apuntó que no tenía que pedir perdón "por haber actuado con candor, honestidad y rectitud ante un claro atropello y flagrante abuso de poder y menosprecio de sus derechos constitucionales"[23] y que no se humillaría "de ese modo ante la decisión en 'cuartos oscuros' y falta de transparencia del Juez durante el mes de septiembre de 2022 en el caso citado".[24] Por lo anterior, el abogado solicitó a este Tribunal que nombrara un Comisionado Especial que fuese independiente al Poder Judicial; permitiera un descubrimiento de prueba limitado; investigara la conducta ilegal y antiética del juez Álvarez Burgos en el caso original, y archivara la *Querella* debido a la falta de prueba clara, robusta y convincente.

**B. Proceso disciplinario ante la Comisionada Especial**

El 22 de enero de 2025, designamos a la Lcda. Crisanta González Seda (Comisionada Especial), exjueza del Tribunal de Primera Instancia, para que atendiera los procedimientos de la *Querella* que nos ocupa y presentara un Informe con las

---

[23]   Íd., pág. 12.

[24]   Íd.

determinaciones de hechos y recomendaciones que estimara pertinentes.[25]   Así las cosas, el 29 de enero de 2025, la Comisionada Especial emitió una *Orden* mediante la cual citó a la Oficina del Procurador General y al licenciado Barreto Cintrón a una vista a celebrarse el 10 de marzo de 2025 para acordar el plan de trabajo a seguir en el caso.   A su vez, ordenó que debían entregar el *Informe entre abogados* en o antes de la mencionada fecha.

Llegada la vista señalada, la Lcda. Yaizamarie Lugo Fontánez (licenciada Lugo Fontánez) compareció en representación de la Oficina del Procurador General, pero no así el abogado ni algún representante legal de éste.   Según surge de la *Minuta* de dicha vista, el licenciado Barreto Cintrón se comunicó vía telefónica con la Secretaría de este Tribunal para notificar que no podría asistir a la vista por razón de enfermedad y ofreció unas fechas según su disponibilidad.   Allí en la vista, la licenciada Lugo Fontánez informó sobre las gestiones que realizó para cumplir con la presentación del *Informe entre abogados;* que acordaron una fecha de reunión para el 28 de febrero de 2025, pero el mismo día el abogado notificó que tenía una situación de salud y no podría reunirse ese día; que no hubo más comunicación entre ellos hasta el 10 de marzo de 2025 cuando el abogado le escribió que no asistiría a la vista pautada porque estaba enfermo.

---

[25]   El archivo en autos de copia de la *Resolución* fue el 24 de enero de 2025.

Ante ese escenario, el 11 de marzo de 2025, la Comisionada Especial emitió una *Orden* en la que señaló una vista para el 20 de marzo de 2025 con el fin de que el licenciado Barreto Cintrón mostrara causa por la cual no debía informar a este Tribunal sobre su incumplimiento con el procedimiento disciplinario al no comparecer a la vista señalada, no presentar evidencia que justificara su incomparecencia y no cumplir con la *Orden* del 29 de enero de 2025. En esa fecha también continuaría la vista de conferencia con antelación a la vista final.

Según ordenado, el 19 de marzo de 2025, las partes presentaron el *Informe entre abogados.* Al día siguiente, se celebró la vista para mostrar causa y la continuación de la vista de conferencia. En cuanto a la *Orden* para mostrar causa, el abogado se expresó con relación a su ausencia a la vista anterior, su salud y las razones para no haber cumplido con la *Orden* del 29 de enero de 2025. De igual manera, pidió disculpas por los inconvenientes causados. Por su parte, la licenciada Lugo Fontánez manifestó que el licenciado Barreto Cintrón mostró disposición y se mantuvo en comunicación durante el trámite para realizar el *Informe entre abogados.* Luego de escuchar a las partes, la Comisionada Especial dejó sin efecto la *Orden* para mostrar causa y continuó la vista señalada. Así, la Comisionada Especial señaló la vista en su fondo para el 14 de mayo de 2025.

Entre otros asuntos relacionados al caso, el día de la vista en su fondo el 14 de mayo de 2025, comparecieron la

licenciada Lugo Fontánez y la Lcda. Melanie Mercado Méndez, ambas de la Oficina del Procurador General, y el licenciado Barreto Cintrón por derecho propio. Allí la Oficina del Procurador General indicó que sometería su caso por el expediente. Como parte de la prueba testifical, declararon los siguientes testigos: el Sr. Antonio Fullana Morales, el Sr. Antonio Fullana Olivencia, el juez Álvarez Burgos y el propio licenciado Barreto Cintrón. Según surge del expediente, no hubo argumentaciones orales ni solicitud de presentarlas por escrito. Ante esto, el caso quedó sometido ante la consideración de la Comisionada Especial.

El 11 de julio de 2025, la Comisionada Especial presentó su Informe, en el cual expuso que se presentó prueba clara, robusta y convincente que apoyaba el cargo imputado, en particular que "la conducta del [abogado] fue irrespetuosa y ofensiva hacia el tribunal".[26] Por consiguiente, determinó que el licenciado Barreto Cintrón infringió el Canon 9 del Código de Ética Profesional, *supra*.

En su Informe, la Comisionada Especial incluyó varios factores a considerarse en caso de que procediera la imposición de alguna sanción disciplinaria. No obstante, no emitió una recomendación particular sobre la sanción que pudiera imponerse al abogado.

Así las cosas, el caso quedó sometido en los méritos para su adjudicación el 3 de septiembre de 2025, por lo que procedemos a esbozar la normativa aplicable.

---

[26] *Informe de la Comisionada Especial*, pág. 38.

II

En el ejercicio de nuestro poder inherente para regular la profesión legal en Puerto Rico, tenemos la obligación de asegurarnos de que los miembros admitidos al ejercicio de la abogacía realicen sus funciones de forma responsable, competente y diligente. *In re* Falcón Morales, 2025 TSPR 104, 216 DPR ___ (2025); *In re* Rádinson Caraballo, 2025 TSPR 71, 216 DPR ___ (2025); *In re* Soto Peña, 213 DPR 663, 675 (2024); *In re* Rivera Justiniano, 212 DPR 385, 400-401 (2023); *In re* Valenzuela Flores, 211 DPR 934, 939 (2023).

El Código de Ética Profesional establece las reglas mínimas de conducta que rigen la práctica de la abogacía en nuestra jurisdicción con el propósito de promover los más altos principios éticos en beneficio del cliente, de la profesión legal, de la sociedad y de las instituciones de justicia. *In re* Rádinson Caraballo, *supra*; *In re* Santiago Ortiz, 2024 TSPR 127, 215 DPR ___ (2025); *In re* Soto Peña, *supra*; *In re* González Díaz, 201 DPR 145, 150 (2018).

En reiteradas ocasiones, este Tribunal ha expresado que el objetivo del procedimiento disciplinario no es castigar al abogado, sino proteger al público y a la profesión mediante una investigación del comportamiento ético del abogado y de sus condiciones morales para determinar si puede continuar ejerciendo la abogacía. *In re* Huertas Soto, 195 DPR 234, 240 (2016); *In re* García Aguirre, 175 DPR 433, 441 (2009).

Debido a que en el procedimiento disciplinario puede verse afectado el título profesional del letrado y, con ello, el derecho fundamental a ganarse el sustento, hemos indicado que el estándar de prueba requerido para imponer sanciones disciplinarias a un integrante de la profesión legal es mayor al que se requiere en los procesos civiles. *In re* Santos Negrón, 212 DPR 965, 973-974 (2023). Ante esto, hemos resuelto que "la acción disciplinaria debe estar basada en prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas". Íd., pág. 974.

## A. Incumplimiento con el Código de Ética Profesional

### 1. Canon 9 (Conducta del abogado ante los tribunales)

En lo pertinente, el Canon 9 del Código de Ética Profesional, *supra*, establece lo siguiente:

> El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.
> El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.

El Canon 9 del Código de Ética Profesional, *supra*, requiere que todos los miembros de la profesión jurídica se conduzcan ante los tribunales con el mayor respeto. *In re* Montañez Morales, 212 DPR 781, 790 (2023); *In re* Meléndez

<u>Artau</u>, 212 DPR 96, 101 (2023); *In re* <u>Lajara Radinson</u>, 207 DPR 854, 863 (2021). Específicamente, ese deber de respeto se manifiesta en estas dos (2) vertientes: (1) el deber de respetar las órdenes y directrices emitidas por los tribunales, las cuales sólo se pueden impugnar mediante los cauces apelativos vigentes (respeto a la autoridad judicial), y (2) el deber de respetar a los jueces, empleados y funcionarios del tribunal, tanto en las comparecencias formales, personales o por escrito, como en las interacciones de carácter informal con éstos (respeto de carácter cívico).**27** S. Steidel Figueroa, <u>Ética del abogado y responsabilidad disciplinaria</u>, San Juan, Eds. SITUM, 2016, pág. 371. Véanse, además: *In re* <u>Torres Alvarado</u>, 212 DPR 477, 486 (2023); *In re* <u>García Pérez</u>, 211 DPR 638, 649-650 (2023); *In re* <u>Sánchez Pérez</u>, 210 DPR 235, 261 (2022); *In re* <u>Lajara Radinson</u>, *supra*, pág. 864; *In re* <u>Feliciano Rodríguez</u>, 198 DPR 369, 379 (2017); *In re* <u>Rodríguez García</u>, 197 DPR 515, 530 (2017).

Asimismo, este canon requiere que los abogados, cuando se dirijan al tribunal —aún para criticarle— lo hagan con respeto y deferencia. *In re* <u>Crespo Enríquez</u>, 147 DPR 656, 662-663 (1999). No obstante, según hemos esbozado, resulta nefasto para la buena práctica de la profesión legal el hecho de que un abogado realice serias imputaciones sobre el obrar de un

---

**27** En lo que concierne al asunto de epígrafe, nos ceñiremos a la segunda vertiente, es decir al deber del abogado de respetar a los jueces, empleados y funcionarios del tribunal, con particular énfasis en las comparecencias por escrito.

juez, cuando tales imputaciones no están avaladas con evidencia contundente e indubitada. Íd., pág. 663.

Conviene señalar que "hemos impuesto sanciones disciplinarias a un abogado, por hacer imputaciones orales o escritas, sobre la comisión de hechos inmorales o ilegales -que no están respaldadas por evidencia competente- tendente a degradar la dignidad, honorabilidad e integridad de los tribunales y de sus funcionarios o que puedan debilitar la confianza pública en los mismos". In re Cardona Álvarez, 116 DPR 895, 906 (1986).

Según lo hemos reiterado, debe quedar meridianamente claro que el Canon 9 del Código de Ética Profesional, supra, no es un escudo contra la crítica a la labor judicial ni tampoco es una barrera para el abogado genuinamente preocupado por la buena marcha de los tribunales. Por el contrario, "[e]ste canon establece una pauta de comportamiento que, entre otras cosas, hace un llamado a la circunspección de la expresión en el contexto del litigio". In re Díaz Olivo, 204 DPR 798, 811 (2020).

**B. El rol del Comisionado Especial**

El Comisionado Especial designado para atender una querella en contra de un abogado ocupa el rol de un juez de primera instancia, ya que tiene la encomienda de recibir la prueba y evaluarla, así como dirimir la credibilidad de aquella prueba testifical presentada. In re Rádinson Caraballo, supra; In re Santiago Rojas, 2025 TSPR 30, 215 DPR ___ (2025); In re Rivera Justiniano, supra,

pág. 404; *In re* Colón Ortiz, 204 DPR 452, 460-461 (2020). Como regla general, las determinaciones de un Comisionado Especial merecen nuestra deferencia. *In re* Rádinson Caraballo, *supra*; *In re* Meléndez Mulero, 208 DPR 541, 554 (2022).

De ordinario, este Tribunal sostendrá las determinaciones de hechos del Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. *In re* Rádinson Caraballo, *supra; In re* Santiago Rojas, *supra; In re* Colón Ortiz, *supra*, pág. 461; *In re* Soto Aguilú, 202 DPR 137, 146 (2019). Claro está, es importante destacar que podemos adoptar, modificar o rechazar el informe presentado por el Comisionado Especial. *In re* Meléndez Mulero, *supra*, pág. 554.

Pasemos a evaluar si el licenciado Barreto Cintrón infringió el Canon 9 del Código de Ética Profesional, *supra*.

### III

Con el propósito de adjudicar el único cargo imputado en este proceso disciplinario, corresponde que examinemos las determinaciones de hechos que incluyó la Comisionada Especial en su Informe, esto luego de la evaluación de la prueba documental estipulada, la evidencia admitida durante el proceso, así como la prueba testifical, incluyendo el testimonio del abogado. Por su pertinencia, citamos *in extenso* las determinaciones allí expuestas:

> 1. El querellado juramentó como abogado el 30 de enero de 2002 y a la notaría el 16 de julio de 2002. Practica su profesión en las jurisdicciones federal y estatal. Estudió una

maestría en Inglaterra, estudió Derecho en Londres y la Universidad de Harvard, en Estados Unidos. Su práctica es en las áreas civil, administrativa, aduana y criminal, en ambas jurisdicciones. Tiene práctica privada solo y en ocasiones con otros abogados.

2. Durante los años que lleva practicando como abogado, hasta la presente queja, el querellado ha tenido las siguientes quejas:

a. El 7 de abril de 2006, en el caso AB-2005-270, en relación con el asunto en que una jueza del TPI remitió una Resolución respecto a alegada conducta inapropiada del querellado en [una] llamada telefónica a su secretaria, el Tribunal Supremo dictó Resolución, mediante la que devolvió el asunto al TPI para que ejerciera el poder de los tribunales ante situaciones de esa naturaleza.

b. El 18 de noviembre de 2016, relacionado con la Queja AB-2015-0171, el Honorable Tribunal decretó el archivo de una queja por recomendación de la OPG y se le exhortó al querellado y [a] otro abogado, a que en el futuro debían mantener un trato cortés y de respeto entre ambos.

c. El 10 de diciembre de 2021, en el caso AB-2020-0069, el Hon. Tribunal Supremo, emitió una Resolución, sobre un referido de una jueza del TPI, censurando al querellado por conducta violatoria de los Cánones 18, 19 y 35 del Código de Ética Profesional relatada en el Informe de la OPG. Se le apercibió de que en el futuro debería cumplir estrictamente con el Código d[e] Ética Profesional para evitar conductas como la que provocó la presentación de la queja. Se le advirtió que su repetición daría lugar a sanciones severas.

d. El 28 de abril de 2023, [en el] [c]aso AB-2022-0016, luego que las partes se allanaron al Informe de la OPG, el Honorable Tribunal censuró al querellado por conducta violatoria del Canon 27 del Código de Ética Profesional relatada en dicho informe. Se le

apercibió que en el futuro debería cumplir estrictamente con el Código de Ética Profesional para evitar conductas como la que provocó la presentación de la queja. Se le advirtió que su repetición daría lugar a sanciones severas.

3. El 8 de abril de 2021, el querellado, por derecho propio, presentó una demanda, contra Arco Construction Corp. Inc. (Arco) y FirstBank de Puerto Rico (FirstBank), en cobro de honorarios, incumplimiento de contrato, interferencia torticera y daños y perjuicios, *Héctor L. Barreto Cintrón v. Arco Construction Corp. Inc.*, Caso Núm. CA2021CV00847.

4. Los testigos presentados en la vista por el querellado, Sr. Antonio Fullana Morales y Sr. Ángel Antonio Fullana Olivencia no eran partes en dicho pleito y su testimonio en la vista evidenciaria no aportó hecho alguno pertinente y relevante a la presente controversia.

5. Conforme surge de la evidencia documental presentada por las partes y admitida, relativa a la demanda, el querellado y las partes demandadas se mantuvieron activos en la presentación de mociones que el TPI (Hon. Wilfredo Maldonado) resolvía prontamente.

6. La parte demandada, Arco, había solicitado la paralización del descubrimiento de prueba que inició el querellado mediante un primer pliego de interrogatorio, requerimiento de información y producción de documentos a Arco y su presidente, Sr. Jeff Cook. Nuevamente, mediante escrito que presentó el 14 de septiembre de 2021, Arco reiteró su solicitud de paralización de descubrimiento de prueba. Al siguiente día, 15 de septiembre de 2021, el TPI (Hon. Wilfredo Maldonado) denegó la solicitud de Arco y autorizó el descubrimiento de prueba cursado por el querellado.

7. La parte demandada, según el testimonio del querellado en la vista evidenciaria, se negaba a entregar documentos que tenía en su poder y el 21 de septiembre de 2021, el Hon. Wilfredo Maldonado ordenó la entrega de los documentos, orden que no fue cuestionada por la parte demandada.

8. El 21 de septiembre de 2021, FirstBank presentó una moción de solicitud de sentencia sumaria, peticionando que se desestimara la

demanda. Esta solicitud se resolvió el 22 de febrero de 2022, cuando el TPI (Hon. Wilfredo Maldonado) emitió Sentencia parcial, en la que acogió la solicitud de sentencia sumaria de FirstBank y desestimó la demanda en su contra. El 27 de septiembre de 2021, Arco presentó una moción informativa en la que indicó que contestó el primer requerimiento de descubrimiento de prueba, que el querellado solicitó una reunión, que Arco contestó cabalmente el descubrimiento y que no podía proveer al querellado información inexistente ya que [é]ste no tenía derecho a llevar a cabo una expedición de pesca y que la solicitud de copia de todos sus récords telefónicos era opresiva y onerosa.

9. El 28 de septiembre de 2021, en una vista por videoconferencia, el tribunal ordenó a Arco a producir los registros de llamadas telefónicas por los tres meses que el querellado solicitó.

10. El 21 de julio de 2022, Arco presentó solicitud de sentencia sumaria y el TPI, ahora con la intervención del promovente como juez, el 1 de agosto de 2022, concedió veinte días al querellado para que replicara. El 22 de agosto de 2022 el querellado presentó escrito alegando incumplimiento de parte de Arco con el descubrimiento de prueba y producción de información y documentos y solicitó que se le ordenara producir la prueba solicitada, so pena de sanciones. Además, solicitó un término adicional de treinta días para replicar a la moción de sentencia sumaria de Arco. A esto, el 24 de agosto de 2022, el tribunal respondió imponiendo una sanción de $250.00 a Arco por incumplir con las órdenes del tribunal y dilatar los procedimientos. Además, ordenó a Arco y a su abogado, so pena de sanciones adicionales[,] que en el término de diez días improrrogable, contestara responsivamente las preguntas y produjera la información solicitada. También, dejó en suspenso la solicitud de sentencia sumaria de Arco hasta que culminara el descubrimiento de prueba. En la misma fecha, 24 de agosto de 2022, el tribunal emitió Resolución y Orden, concediendo término a las partes para notificar peritos, para rendir informes periciales e indicó que el descubrimiento de prueba finalizaría el 30 de mayo de 2023, concedió término al querellado para replicar la moción de sentencia sumaria [y] señaló conferencia con antelación a juicio para el 8 de agosto de 2023.

11. El querellado se sintió ofendido por el contenido de un escrito presentado por los abogados de Arco[,] por lo que el 7 de agosto de 2022, solicitó sanciones a Arco, o [a] sus abogados, por temeridad y el uso difamatorio, libeloso, indecoroso e irrespetuoso del lenguaje en la moción de reconsideración. Alegó que en dicha moción realizaron una representación falsa de los hechos como una especie de revanchismo por la sanción impuesta y que le imputaron incurrir en tergiversaciones y representaciones falsas. Solicitó al tribunal que le impusiera $1,000 de sanciones económicas a Arco o una de $500 por cada abogado, el desglose de la moción de reconsideración y una retractación o disculpa por [é]sta. El 5 de septiembre de 2022, el tribunal denegó la solicitud de sanciones del querellado por la moción de reconsideración presentada. Para esa fecha, 5 de septiembre de 2022, ya el Juez había resuelto la Moción de Reconsideración de Arco Construction, NO HA LUGAR y no había ninguna otra Moción de Reconsideración de Arco ante su consideración.

12. Sobre la determinación del Tribunal de declarar NO HA LUGAR al descubrimiento de prueba, lo que motivó la moción solicitando inhibición del promovente, la percepción y lo que entendió el querellado fue que el juez hizo una sugerencia a la parte demandada para que escribiera sobre algo resuelto y que el 26 de septiembre ellos radicaron la moción y el juez le dio un No Ha Lugar a la solicitud de descubrimiento de prueba. Por eso presentó la primera moción de inhibición.

13. El querellado entiende y se reafirma en que la conducta del juez era impropia. Indicó que le recomendaron que pidiera perdón al juez, pero su posición es que debe delatar lo que ocurra, que no hubo falta de respeto y en su testimonio reafirmó sus expresiones sobre [é]ste, indicando que luego de presentada la segunda moción de inhibición, [é]ste fue recusado.

14. El 16 de agosto de 2023, el TPI acogió la Moción de Sentencia Sumaria de Arco y desestimó la demanda.

15. Surge de la evidencia en este proceso, que en el procedimiento ante el TPI, el querellado utilizó las siguientes expresiones en sus escritos, entre otras:

a. En septiembre de 2022, el querellado presentó escrito en oposición a una moción de Arco y expresó que la moción del demandado es "intelectualmente deshonesta e invita a la arbitrariedad, al favoritismo y parcialidad y al error y abuso de derecho intencional y pretende inducir a error al Tribunal".

b. El 27 del mismo mes y año, el querellado presentó un escrito sobre inhibición y/o recusación del Juez, alegando favoritismo, conducta parcializada y prejuiciada a favor de Arco. Alegó que la reconsideración de sus determinaciones previas fueron "para favorecer y parcializarse arbitraria y prejuiciadamente a favor de Arco Construction Co. y en contra de la parte demandante", para "allanar el terreno" para dictar sentencia sumaria a favor de Arco. Además, expresó que "la determinación es deliberadamente ilegal, antiética y omite intencionalmente" que el promovente ya había denegado la reconsideración, que el Juez Álvarez Burgos, "[m]otu proprio y sin justificación alguna procedió de forma claramente irregular, improcedente y antiética, clara y deliberadamente prejuiciada y parcializada y arbitraria; que el Juez ya había prejuzgado el asunto. Y que solo Dios sabe lo que verdaderamente ocurrió durante ese término para que el Juez Ismael Álvarez Burgos incidiera en conducta tan antiética, parcializada, prejuiciada e ilegal de manera tan flagrante, evidente y obvia, según se desprende de los autos["].

c. Además, opinó que el juez se convirtió en abogado de Arco, que dejó de ser un ente neutral para convertirse en parte del equipo legal y abogado de ARCO. Catalogó la determinación del juez como inexplicable e irracional y que ha descarrilado el curso de la justicia ilegalmente. Que le sentenció el caso a muerte de la manera más prejuiciada y parcializada que ha visto en su carrera de más de veintidós años de profesión legal. Alegó que el Juez Álvarez ha colocado el caso de forma prejuiciada, parcializada y arbitraria en la posición de desestimarlo

mientras que le ha negado injusta e ilegalmente el derecho constitucional al descubrimiento de prueba real y verdadero que le asiste a la parte demandante.

d. Llamó al juez Álvarez absurdo, ilusorio y falso, parcializado, prejuiciado y antiético.

e. Se refirió al ánimo prevenido y favoritismo del Juez Álvarez Burgos hacia la parte demandada y de una animosidad personal en su contra y en contra del caso.

f. Que tiene el deber legal y ético de reportar prontamente toda conducta antiética judicial que refleje favoritismo, parcialidad, prejuicio, abuso y/o corrupción, sea o no deliberada e intencional. Que este tipo de mala conducta judicial tan obvia y flagrante le resta credibilidad y menoscaba y lacera la confianza y la fe de la ciudadanía en la integridad, transparencia e imparcialidad de nuestro sistema de justicia.

g. Que la intervención del Juez Ismael Álvarez Burgos reflejaba en su revés una motivación ulterior inexplicable que obedece a una predisposición de soslayar la ley y los derechos constitucionales y el debido proceso de ley de la parte demandante con tal de favorecer a ARCO a ultranza. Que la mala conducta del juez es una flagrante burla al mínimo de estándar de integridad judicial y a los derechos civiles y constitucionales más sagrados y básicos en nuestro ordenamiento jurídico.

h. Que las expresiones de la Resolución del promovente, en relación con la moción de inhibición, son apasionadas expresiones personalistas e imputaciones falsas e infundadas hacia su persona. Que el juez tenía intenciones de continuar con su conducta de animosidad personal, prejuicio y parcialidad en su contra, de corte personalista y [apasionada]. Se refirió a las expresiones del Juez como autoserviles e infundadas y conclusivas en ánimo de desviar la atención de la animosidad personal y agenda personal hacia el abogado, que no se caracterizan

por el trato justo e imparcial y de cortesía y respeto que debe tener todo juez hacia las partes litigantes. Alegó que el promovente exhibía hacia su persona pasión, rencor y odio personal y predisposición a intimidar y castigarlo.

16. Sobre este proceso, al amparo de la Regla 14 del Reglamento del Tribunal Supremo de Puerto Rico, surge del expediente que expresó lo siguiente:

a. El 10 de octubre de 2023, el querellado se refirió al Informe de la OPG como extenso, incorrecto, parcializado y como una tergiversación que no está fundamentado por jurisprudencia, con recomendaciones exageradas que no guardan proporción con la sanción de amonestación y archivo impuestas por el Honorable Tribunal en conductas imputadas como el caso de In re: Díaz Olivo y otros similares. Añadió que el Informe era parcializado, infundado y una tergiversación y una persecución maliciosa y una persecución selectiva como acto de represalia por parte del Estado, por auscultar y delatar la clara conducta antiética del Juez Ismael Álvarez Burgos.

b. Solicitó el nombramiento de un Comisionado Especial Independiente al Poder Judicial alegando "conexión de dicha rama de gobierno con la contratista F&R Construction Group, Inc." siendo dicha entidad la contratista que construyó el Centro Judicial de Caguas y siendo esa entidad parte contratante junto con ARCO Construction Corp.

c. Al alegar que quien presenta una moción de inhibición y/o recusación debe tener cierto grado de inmunidad contra represalias del Estado hace referencia a este proceso, el que califica como un claro ejemplo de persecución maliciosa y prosecución selectiva y siniestra por parte del Estado, al que le molesta que se llamen las cosas por su nombre, pues está documentado en un informe reciente de Puerto Rico por las Naciones Unidas que la judicatura de Puerto Rico tiene un problema real de falta de transparencia y de falta de independencia ejemplificado por este caso.

> d. En su contestación a la Querella, el querellado repite los señalamientos e imputaciones sobre el promovente y respecto a este procedimiento lo califica de inquisición y vengativo en represalia por parte del Estado. (Negrilla y escolios omitidos).

Luego de evaluar la conducta del licenciado Barreto Cintrón, a la luz de la normativa aplicable, el expediente del caso, así como el Informe presentado por la Comisionada Especial, existen fundamentos suficientes para concluir que el abogado infringió el Canon 9 del Código de Ética Profesional, *supra*. Asimismo, coincidimos con lo expresado por la Comisionada Especial en su Informe en torno a la violación del Canon 9 del Código de Ética Profesional, *supra*, por lo que acogemos sus fundamentos. Veamos.

Específicamente, la Comisionada Especial expuso que en diferentes comparecencias del licenciado Barreto Cintrón, desde su *Contestación a la Queja* hasta su testimonio en la vista evidenciaria, el abogado ha defendido y reiterado sus expresiones, y las considera correctas y justificadas, incluyendo sus expresiones en este procedimiento disciplinario. Añadió que, del examen de las diferentes instancias en las que el licenciado Barreto Cintrón ha utilizado las expresiones en cuestión, se puede concluir que no se trata de lenguaje técnico legal que se suele utilizar -según alega el abogado- en solicitudes de inhibición y comparecencias ante los tribunales. A su vez, la Comisionada Especial apuntó que en el proceso disciplinario el licenciado Barreto Cintrón no aportó evidencia alguna que sostuviera las

alegaciones que realizó en contra del juez Álvarez Burgos en diversos escritos.

Asimismo, la Comisionada Especial indicó que, tanto del expediente como del testimonio vertido por el abogado, se puede concluir que las imputaciones de parcialidad, prejuicio, falta de integridad o conducta ilegal que realizara el licenciado Barreto Cintrón en contra del juez Álvarez Burgos fueron motivadas por una decisión judicial de este último. Al respecto, planteó que en lugar de que el abogado recurriera a los foros pertinentes para cuestionar -con los argumentos en derecho que sustentaran su posición- las determinaciones que consideraba erróneas, el licenciado Barreto Cintrón decidió presentar unos escritos con ciertas imputaciones en contra del juez Álvarez Burgos, esto sin presentar prueba contundente e indubitada sobre sus alegaciones. Según expuso la Comisionada Especial, esto constituyó una falta de respeto y un ataque injustificado a la dignidad del tribunal.

Por último, en su Informe, la Comisionada Especial incluyó varios criterios a considerarse en caso de que procediera la imposición de alguna sanción disciplinaria. No obstante, no emitió una recomendación particular sobre la sanción que pudiera imponerse al abogado.

Ante este escenario, concluimos que quedó demostrado, con prueba clara, robusta y convincente, que el licenciado Barreto Cintrón actuó en contravención al Canon 9 del Código de Ética Profesional, *supra*, por lo que le conferimos entera

deferencia a las determinaciones de la Comisionada Especial. *In re* Meléndez Mulero, *supra*, pág. 554; *In re* Colón Ortiz, *supra*, pág. 461.

IV

Procede que determinemos la sanción disciplinaria a imponerle al licenciado Barreto Cintrón por su conducta antiética. Al tiempo de fijar la misma, procede que evaluemos los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* Santiago Rojas, *supra*; *In re* Soto Peña, *supra*, págs. 680-681; *In re* Rivera Justiniano, *supra*, págs. 407-408; *In re* Ocasio Bravo, 209 DPR 1043, 1060-1061 (2022).

En la evaluación de la sanción a aplicarse, consideramos los factores siguientes. En cuanto a la reputación del abogado en la comunidad, no se presentó evidencia a esos efectos. En relación con el historial disciplinario, es preciso señalar que el historial del licenciado Barreto Cintrón comprende de cinco (5) quejas anteriores y en dos (2) de éstas fue censurado por conducta violatoria de varios cánones del Código de Ética Profesional.[28] Además, en esas

---

[28] Al respecto, refiérase a la nota al calce número 1 de esta Opinión *Per Curiam*, así como a la determinación de hechos número 2 incluida en el

dos (2) ocasiones en las que fue censurado (AB-2020-69 y AB-2022-16), se le apercibió que en el futuro debía cumplir estrictamente con el Código de Ética Profesional para evitar conductas como las que provocaron la presentación de las quejas. De igual manera, en ambas instancias se le advirtió que su repetición daría lugar a sanciones severas. Mientras, en otras de las quejas (AB-2015-171 y AB-2020-83), aunque decretamos el archivo de éstas, exhortamos al abogado a que en el futuro debía regirse por el Código de Ética Profesional.

En cuanto a si la conducta fue una aislada, consideramos que el historial disciplinario del licenciado Barreto Cintrón refleja que su comportamiento en el asunto de epígrafe no es uno aislado, sino más bien constituye una conducta repetitiva.

Por último, referente a si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, a través de todo el procedimiento disciplinario no surge que el abogado haya mostrado aceptación o arrepentimiento por la conducta imputada. Por el contrario, el licenciado Barreto Cintrón se sostiene en su posición de que la conducta exhibida fue apropiada y niega consistentemente que haya actuado de manera incorrecta.

Luego de ponderar la totalidad de las circunstancias, en particular el hecho de que el abogado fue censurado en dos (2) ocasiones previas y también fue apercibido de que en el

---

*Informe de la Comisionada Especial*, págs. 25 y 26 (reproducida *in extenso* en las págs. 30 y 31 de esta Opinión *Per Curiam*).

futuro debía cumplir estrictamente con el Código de Ética Profesional para evitar conductas como las que provocaron la presentación de las quejas, así como al hecho de que en ambas instancias se le advirtió que su repetición daría lugar a sanciones severas, en virtud de nuestro poder inherente de reglamentar la profesión legal, procede que decretemos la suspensión inmediata del licenciado Barreto Cintrón del ejercicio de la abogacía y la notaría por el término de un (1) año.

V

Por los fundamentos antes expuestos, suspendemos de forma inmediata al Lcdo. Héctor L. Barreto Cintrón del ejercicio de la abogacía y la notaría por el término de un (1) año.

En consecuencia, se ordena al Alguacil de este Tribunal a incautar la obra notarial que se encuentra bajo la custodia del señor Barreto Cintrón al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

Asimismo, el señor Barreto Cintrón deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta

(30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.  No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal, de así solicitarlo en el futuro.

Por otro lado, en virtud de la suspensión inmediata de la práctica de la notaría, la fianza que garantiza las funciones notariales del señor Barreto Cintrón queda automáticamente cancelada.  Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Héctor L. Barreto Cintrón    CP-2024-2    Conducta
        (TS-13,870)                           Profesional

SENTENCIA

En San Juan, Puerto Rico a 13 de febrero de 2026.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, suspendemos de forma inmediata al Lcdo. Héctor L. Barreto Cintrón del ejercicio de la abogacía y la notaría por el término de un (1) año.

En consecuencia, se ordena al Alguacil de este Tribunal a incautar la obra notarial que se encuentra bajo la custodia del señor Barreto Cintrón al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

Asimismo, el señor Barreto Cintrón deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión *Per Curiam* y Sentencia.

No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal, de así solicitarlo en el futuro.

Por otro lado, en virtud de la suspensión inmediata de la práctica de la notaría, la fianza que garantiza las funciones notariales del señor Barreto Cintrón queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese por correo electrónico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo